**No. 23-15930**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

TAMARA WAREKA,

*Plaintiff-Appellant,*

v.

TRUSPER, INC. et al,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Norther District of California
Hon. Vince Chhabria
No. 3:21-cv-02682-VC

---

## APPELLANT'S OPENING BRIEF

---

Mathew K. Higbee
Ryan E. Carreon
Naomi M. Sarega
**HIGBEE & ASSOCIATES**
1504 Brookhollow Drive, Suite 112
Santa Ana, California 92705
Tel: 714-617-8336
mhigbee@higbee.law
rcarreon@higbee.law
nsarega@higbee.law

*Attorneys for Plaintiff-Appellant Tamara Wareka*

---

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. iv

STATEMENT OF JURISDICTION ....................................................................1

ISSUES PRESENTED ........................................................................................2

STATEMENT OF THE CASE ...........................................................................3

I.      INTRODUCTION....................................................................................3

        A.      Factual Background ......................................................................3

        B.      Procedural Background.................................................................6

STANDARD OF REVIEW...............................................................................12

SUMMARY OF THE ARGUMENT.................................................................13

I.      THE ANTI-SLAPP ORDER SHOULD BE REVERSED BECAUSE THE
        DISTRICT COURT FAILED TO APPLY THE CORRECT LAW.............15

        A.      The Parties Do No Dispute That Wareka Properly Established The
                First Prong Of The Anti-SLAPP Analysis.........................................16

        B.      Despite A Choice Of Law Provision Requiring New York Law Be
                Applied, The District Court Erroneously Applied California Law.....18

        C.      Even Under California Law, The District Court Erred By Finding
                That Attorneys' Fees Are Recoverable As Contract Damages...........21

        D.      The District Court Also Erred By Invoking Nominal Damages For A
                Harm That Was Not Legally Cognizable............................................24

        E.      If Anti-SLAPP Relief Is Inappropriate, Wareka Still Prevails Under
                12(b)(6).      27

II.     THE DISTRICT COURT INCORRECTLY ENTERED SUMMARY
        JUDGMENT ON TRUSPER'S COUNTERCLAIM FOR BREACH..........27

      A.      The Record Contains Multiple Disputes Of Material Fact As To Whether Wareka's Claim Against Trusper Was Released. ...............28

      B.      The District Court Erred In Granting Summary Judgment On The Counterclaim Because Trusper Did Not Properly Raise It................32

III.    CONCLUSION ...............................................................................................35

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*350 Mont. v. Haaland,* 50 F.4th 1254 (9th Cir. 2022)..............................................12

*Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)....25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-58 (1986) ..............................30

*Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088 (1972)...........................................25

*Baldwin v. Redwood City*, 540 F.2d 1360, 1364 (9th Cir. 1976) .............................1

*Berglee v. First Nat'l Bank*, 1993 U.S. App. LEXIS 4937, *5 (9th Cir., 1993) .....19

*Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999) .16

*Cabrera v. Google LLC,* 2023 WL 5279463, 2023 U.S. Dist. LEXIS 142643, fn. 5 (N.D. Cal., Aug. 15, 2023) ........................................................................................25

*Chan v. Curran* 237 Cal.App.4th 601, 624 (2015)..................................................23

*Congel v. Malfitano*, 31 N.Y.3d 272, 290-92 (2018) ..............................................19

*Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29 Cal. App. 5th 1 (2018) ...............................................................................................................8, 22, 23

*Doe v. Gangland Prods.*, 730 F.3d 946, 951 (9th Cir. 2013) ..................................12

*Fugnetti v. Bird B Gone*, 2019 U.S. Dist. LEXIS 208351 (C.D. Cal. Sep. 16, 2019) ...............................................................................................................................17

*iGo Mktg. & Entertainment, LLC v. Hartbeat Prods.*, LLC, 217 A.D.3d 753, 754 (App. Div. 2nd Dept. 2023)......................................................................................19

*In re Facebook Privacy Litigation*, 192 F. Supp. 3d 1053, 1061-62 (N.D. Cal. 2016).....................................................................................................................24, 26

*Karetsos v. Cheung,* 670 F. Supp. 111, 115 (S.D.N.Y. 1987)................................19

*Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 144-48 (2d Cir. 2013)....15

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).........................15

*Navellier v. Sletten*, 29 Cal. 4th 82, 89-90 (2002)...................................7, 16, 17, 22

*Olson v. Arnett* 113 Cal.App.3d 59, 67 (1980) ...................................................7, 22

*Opperman v. Path, Inc.,* 84 F. Supp. 3d 962, 990-91 (N.D. Cal. 2015) .................25

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) ........................................................................................16, 27

*Richardson v. Runnels*, 594 F.3d 666, 671-72 (9th Cir. 2010) ...............................29

*Roberts v. W. Pac. R. Co.*, 142 Cal. App. 2d 317, 323 (1956) ...............................25

*Ruiz v. Gap, Inc.,* 380 Fed. Appx. 689, 692 (9th Cir. 2010) ...................................25

*Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)....32

*United States v. 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008)..................1

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000 (N.D. Cal., Nov. 10, 2015) .......................................................................................15

*Walker v. Ford Motor Co.*, 768 Fed. Appx. 601 (9th Cir. 2019) .................8, 22, 23

## Statutes

Cal. Civ. Code § 3301 .................................................................................................26

Cal. Civ. Code § 3360 ...........................................................................................24, 26

Cal. Code Civ. Proc. § 1021 ......................................................................................21

Cal. Code Civ. Proc. § 1033.5 ....................................................................................23

## Treatises

1 Matthew Bender Practice Guide: California Contract Litigation, Ch. 7, § 7.04 ..25

1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 878 ..............25

# STATEMENT OF JURISDICTION

This action arises under 28 U.S.C. § 1331 and the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ("Copyright Act") and 28 U.S.C. § 1367. *See* Excerpt of Record ("ER") 85, 160-161.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is taken from an order of the District Court denying an anti-SLAPP motion to strike (1-ER-3-5) and a subsequent order granting a motion for summary judgment (1-ER-7-8), both of which merged into a final judgment entered by the District Court on June 26, 2023 (1-ER-10-11). *See United States v. 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008) ("[I]nterlocutory order[s] merge[] in the final judgment and may be challenged in an appeal from that judgment." (quoting *Baldwin v. Redwood City*, 540 F.2d 1360, 1364 (9th Cir. 1976)).

A timely Notice of Appeal was filed the very same day. 3-ER-366-370; *see also* Federal Rule of Appellate Procedure 4(a)(1)(A).

## ISSUES PRESENTED

1.      Whether a third-party beneficiary to a contract that does not contain an attorneys' fees provision can state a counterclaim for breach of contract where the sole alleged damages are for attorneys' fees arising out of the litigation.

2.      Whether the District Court properly granted summary judgment on a breach of contract counterclaim where the moving party never discussed any of the elements of breach of contract in its summary judgment motion nor identified any facts or evidence supporting such elements.

## STATEMENT OF THE CASE

## I.    INTRODUCTION
### A.    Factual Background

This matter arises out of a copyright infringement case brought by Tamara Wareka p/k/a Tamara Williams ("Wareka") against Trusper Inc. d/b/a Musely ("Trusper").

Wareka is a highly successful freelance photographer specializing in beauty and fashion photography. 2-ER-82. Wareka is most well-known for her natural and clean model portraiture featured on her highly popular Instagram account @tamarawilliams1, which has amassed over 400,000 followers. *Ibid*. Wareka's portfolio includes international clients, and her work has been featured in top publications such as *Vogue, Harper's Bazaar, Marie Claire, Elle, L'Officiel, Glamour, Cosmopolitan, Maxim*, and many more. 2-ER-83.

Wareka is the owner and rights holder to a photograph of model Jenni Mulder ("Mulder Photograph"). 2-ER-83, 102-103, 118, 161, 171; 3-ER-296.

Trusper is an e-commerce company that formerly operated the Musely Marketplace, an online platform that allowed third-party merchants to host their own "shops" and engage in commerce ("Musely Platform[1]"). 2-ER-161. One such merchant was a business called Mai Couture with whom Trusper entered into a

---

[1] In the record, Trusper interchangeably refers to the Musely Platform and Trusper's separate social media pages such as Instagram and Facebook. The Musely Platform, an online e-commerce site, was hosted via the webpage www.musely.com. *See* 2-ER-177. The Services Agreement between Mai Couture and Trusper specifically states that it governed Mai Couture's use of "Trusper Marketplace" *i.e.* Mai Couture's page on the e-commerce website www.musely.com. *See* 2-ER-126-127. In contrast, the Musely social media pages, which hosted the Musely Posts at issue, do not exist on www.musely.com, but instead exist on platforms run by third parties Instagram and Facebook. Thus, while Trusper references its "platform" or "marketplace" to refer to both the e-commerce website and the social media pages they separate and distinguishable.

services agreement ("Services Agreement") in January of 2016. 2-ER-126-127, 161. The Services Agreement between Mai Couture and Trusper was silent as to use or exchange of intellectual property by Mai Couture and Trusper, and was also silent as to Mai Couture's ability to access or not access Trusper's social media accounts. *See* 2-ER-126-127.

In April 2020, Wareka discovered the Mulder Photograph being used on the Mai Couture Instagram page "maicouture" in a post dated March 19, 2018 ("Mai Couture Post"). *See* 2-ER-71. The Mai Couture Post included the text

> "Add a glow to your look with Mai Couture's Highlighter Paper. Shop now at @amazon."

*Ibid.*

Subsequently, Warkea's agent contacted Mai Couture and entered into a settlement agreement ("Prior Settlement Agreement"). *See* 2-ER-68-71. As part of the Prior Settlement Agreement, Wareka agreed to release "all claims related to the Image" against Mai Couture and, as relevant here, Mai Couture's agents. *Ibid*. The Prior Settlement Agreement also stated that it "shall inure to the benefit of and be binding upon the Parties and … all those acting in concert or participation with them or under their direction or control." *Ibid*. The Prior Settlement Agreement also contained an exclusive venue and choice of law provision stating that any action for breach would be brought exclusively in New York and should be interpreted according to the laws of New York. *Ibid*.

Around that same time, Warkea also discovered the Mulder Photograph being used on the Trusper controlled Instagram and Facebook pages for the Musely Platform in posts dated July 19, 2019 ("Musely Posts"). The text of the Musely Posts read

> "Shop our summer glow must-have – @maicouture's genius combination blotting papers + highlighter [emoji]. Hailed as the only shatterproof, lightweight and convenient makeup of its kind, the unique cosmetic paper technology is exceptionally formulated to remove excess facial oils while

allowing makeup to be applied entirely sans brushes – making on-the-go applications and touch-ups a breeze.

Shop: [link].

2-ER-64-66.

The Musely Posts were created over one year after the Mai Couture Post.

In April 2020, an agent of Wareka contacted the DMCA registered agent for Trusper, Tara Bonakdar regarding the Musely Posts. Bondaker stated in an email that "[v]irtually all of the content on Instagram is user-generated" and that Trusper had no obligation beyond removing the Musely Posts. *See* 2-ER-75.

On May 5, 2020, Wareka's agent forwarded the email chain to Mai Couture's CEO Mai Tran to inquire whether Mai Couture had, in fact, provided the Mulder Photograph to Trusper. 2-ER-73-74. Tran responded by stating "We do not provide Musely or any retailers images for social [media.] The only images we provide are our product images for their platform." *Ibid.* Indeed, screenshots of the Mai Couture page on the Musely Platform corroborated Tran's statement by showing only images of the packaging of Mai Couture's "Glow Duo" highlighter paper product. *See* 2-ER-177.

Over one year later, in September 2021, Katy Sun ("Sun"), the marketing director for the Musely Platform, reached out to Tran. In the email exchange, Sun stated "We're now trying to figure out why the [Mulder Photograph] was posted on our Instagram … Do you remember any context around why Musely reposted it --- was it sent to us by your team?" 2-ER-179.

In February of 2022, Wareka's agent again reached to Mai Couture to confirm that Mai Couture did not provide the Mulder Photograph to Trusper or otherwise access or post the Mulder Photograph on the social media pages for the Musely Platform. Tran responded that "[w]e did not provide [the] image nor access Musely's account." 2-ER-73.

On June 9, 2022 Trusper's CEO, Jack Jia, submitted a declaration under penalty

of perjury. *See* 3-ER-280-284. In his testimony Jia stated only that Trusper "believes" that Mai Couture directly uploaded the Mulder Photograph to the Musely social media pages but that "it is [also] possible" that the Mulder Photograph was supplied directly to Trusper, who then posted the Mulder Photograph itself. 3-ER-281-282.

### B.     Procedural Background

On April 21, 2021, Wareka filed suit against Trusper alleging that Trusper's use of the Mulder Photograph  in the Musely Posts constituted copyright infringement. 2-ER-81-87. Nearly one year later, on April 5, 2022, Trusper filed a Counterclaim against Wareka[2] for breach of the Prior Settlement Agreement. *See* 2-ER-159-175. As its sole alleged damages resulting from the alleged breach, Trusper claimed that it suffered consequential damages in the form of "time and attorney's fees" related to having to defend against Wareka's infringement suit as well as "reputational harm as an alleged copyright infringer." 2-ER-166.

On May 26, 2022, Wareka filed an anti-SLAPP Motion to Strike or in the Alternative To Dismiss the Counterclaim. 3-ER-328-348. In her Motion, Wareka argued (1) that Trusper was not a third-party beneficiary to the Prior Settlement Agreement and therefore could not enforce it; (2) that under both California and New York law, "reputational harm" and "attorney's fees" are not legally cognizable damages for a breach of contract; (3) that Trusper could not demonstrate a breach because the Musely Post was independently created by Trusper and not "in concert and participation" with Mai Couture; and (4) that Trusper's Counterclaim was filed in an improper venue because the Prior Settlement Agreement called for exclusive venue

---

[2] Trusper also filed various claims against Mai Tran and Mai Couture, however the Mai Couture defendants have refused to participate in this action either by responding to the claims asserted by Trusper or by responding to various attempts to try and obtain discovery.

in New York. *Ibid.*

In opposition, Trusper argued that it had standing to pursue a breach claim against Wareka noting that "[w]hether the [Musely] Posts were posted through Trusper by Mai Couture is highly relevant" to determining whether Trusper was "acting in concert and participation" with Mai Couture and cited to both New York and California law. 3-ER-263-265. As to damages, Trusper abandoned its "reputational harm" as damages theory and instead solely focused on its theory that attorneys' fees spent in defense of suit could be recoverable as consequential damages flowing from a breach of contract, relying solely on California law and failing to cite any New York authorities. 3-ER-269-272. Finally, Trusper argued that California was the proper venue for its state law contract claim since Wareka had chosen to file a federal copyright infringement suit against it in California. 3-ER-273-276.

After the motion was fully briefed, the District Court held a hearing. *See* 3-ER-210-242. At the hearing, the District Court focused primarily on whether Trusper could recover nominal damages for its breach of contract Counterclaim. *See* 3-ER-224-230. In response, counsel for Wareka argued that the issue of nominal damages concerns only the *amount* of damages to be awarded, but since damages was an essential element of a breach of Trusper's breach of contract claim, Trusper was required to plead a legally available *category* of damages for the claim to survive regardless of whether the award would be nominal or not. *Ibid.*

On the issue of attorneys' fees as an available category of consequential damages, the District Court acknowledged that two California appellate decisions --- *Olson v. Arnett,* 113 Cal.App.3d 59, 67 (1980) and *Navellier v. Sletten,* 106 Cal.App.4th 763 (2003) -- had clearly held that attorneys' fees are not recoverable as contract damages. 3-ER-230. Nevertheless, the District Court expressed agreement with what it conceded was "dicta" in the case *Copenbarger v. Morris Cerullo World*

*Evangelism, Inc*., 29 Cal. App. 5th 1 (2018) as cited in a dissenting opinion[3] filed in the unpublished case *Walker v. Ford Motor Co*., 768 Fed. Appx. 601 (9th Cir. 2019) which disagreed with the holdings in *Olson* and *Navellier.* 3-ER-230-231.

After the hearing, the District Court ordered the parties to submit further briefing about whether Trusper could receive nominal damages on its breach of contract claim. 3-ER-214. In its supplemental brief, Wareka again articulated her position that under either New York or California law, nominal damages could not be recovered if the *category* of damages sought to be recovered was legally unavailable. *See* 3-ER-204-207.

On July 28, 2022, the District Court denied Wareka's anti-SLAPP motion ("anti-SLAPP Order"). 1-ER-3-5. In its denial, the District Court primarily focused on Trusper's "attorney's fees as consequential damages argument" acknowledging that multiple California intermediate appellate courts have held that attorney's fees cannot be recovered as consequential damages for breach of contract, but finding that these decisions were not binding because there was "convincing evidence" that the California Supreme Court would decide the issue differently based on the dicta articulated in *Copenbarger*. *Ibid*. Although specifically raised by Wareka in briefing and at the hearing, the District Court's anti-SLAPP Order did not address the choice of law provision stating that the Prior Settlement Agreement was to be governed by New York law, nor did it address the New York authority provided by Wareka that attorney's fees cannot be recovered as consequential damages in a breach of contract claim. *See Ibid*.

On September 21, 2022, Trusper filed a Motion for Summary Judgment. 2-ER-

_____

[3] Interestingly, the majority holding in W*alker* specifically recognized that "California's intermediate appellate courts do not permit 'attorney's fees expended in the continuation of the underlying action' as damages for breach of a settlement agreement," citing to both *Olson* and *Navellier. Walker*, 768 Fed. Appx. at 602.

180-295. As its sole argument on summary judgment, Trusper argued that the Musely Post was created "in concert and participation" with Mai Couture and therefore the release provision of the Prior Settlement Agreement applied to Trusper. *Ibid.* The sole evidence provided by Trusper was the declaration of Jack Jia previously submitted in connection with the anti-SLAPP stating only that Trusper "believes" that Mai Couture directly uploaded the Mulder Photograph to the Musely social media pages or that "it is [also] possible" that the Mulder Photograph was supplied directly to Trusper who then posted the Mulder Photograph itself. *See* 3-ER-281-282.

Trusper's Motion for Summary Judgment did not discuss any of the essential elements of its breach of contract Counterclaim, nor did it discuss how the undisputed evidence established a breach of contract. *Ibid.* Rather, the entirety of Trusper's Motion for Summary Judgment focused on the threshold issue of the applicability Prior Settlement Agreement to Trusper and the issue of damages. Notably, Trusper conceded in its motion that the Prior Settlement Agreement was to be interpreted "[u]nder New York law, which governs the Agreement." *See* 2-ER-192.

Wareka opposed by arguing that disputes of material fact existed as to whether Trusper was acting "in concert and participation" with Mai Couture when it created the Musely Post given the numerous email statements with Mai Couture's CEO wherein she stated that she never gave Trusper the Mulder Photograph and never had access to Trusper's social media accounts. 2-ER-49-54, 63, 73-77. Wareka also presented emails from Trusper employees stating that they were unsure where the Mulder Photograph originated from and also pointed Jia's declaration wherein he merely states his "belief" as to what happened but failed to present any undisputed factual basis for that belief. 2-ER-79, 179; 3-ER-281-282.

Wareka also argued that summary judgment for Trusper's breach of contract Counterclaim was not ripe for adjudication because Trusper's motion failed to include any facts establishing the essential elements of breach. 2-ER-54.

On February 8, 2023, the District Court granted summary judgment in favor of Trusper on the entirety of Wareka's infringement claim and Trusper's Counterclaim for Breach of Contract ("Summary Judgment Order"). 1-ER-7-8. In its three-paragraph ruling, the District Court stated that there were no disputes of material fact because "[e]ven if Trusper independently obtained the photograph and posted it on its own social media channels, no reasonable juror could conclude that Trusper did not act in concert or participation with Mai [Couture]" since the Services Agreement between Trusper and Mai Couture contemplated the promotion of Mai Couture's products on Trusper's social media pages. 1-ER-7.

The District Court's ruling did not cite to any case law or statute supporting its ruling, nor did the District Court's summary judgment ruling address any of the essential elements of breach of contract. *Ibid.* At the conclusion of its summary judgment order, the District Court set a status conference "to discuss how to adjudicate damages." 1-ER-8.

At the status conference, counsel for Wareka advised the District Court that he believed that because Trusper never argued any elements of its Counterclaim on summary judgment, that such issues remained to be decided and that it would be improper to simply decide the damages amount to be awarded to Trusper. 2-ER-15-20. The District Court responded by suggesting that its Summary Judgment Order was completely dispositive because establishing the essential elements of Trusper's Counterclaim was "basically ministerial." 2-ER-18. The District Court also stated that it had made its decision in the Summary Judgment Order by exclusively applying California law because Wareka has "probably waived the right to argue that New York law applies." 2-ER-20-21.

The District Court then stated that "we'll try the [breach of contract] issue in front of a jury" even though in the District Court's opinion Wareka's counsel "know[s] in your heart of hears that your client is going to lose this case, and that your client is

going to have to pay Trusper's attorney's fees." 2-ER-21. The District Court then asked Wareka's counsel "whether your client is a real client or what" and suggested that Wareka's counsel's arguments were "borderline frivolous[]" before referring the parties to a settlement conference and setting the case for trial. *Ibid*.

The District Court subsequently entered a final judgment on June 26, 2023 and Wareka timely appealed. *See* 1-ER-10-11, 3-ER-366-370.

## STANDARD OF REVIEW

A denial of an anti-SLAPP motion is reviewed *de novo*. *Doe v. Gangland Prods.*, 730 F.3d 946, 951 (9th Cir. 2013). Likewise, a district court's order granting summary judgment is also reviewed *de novo*. *350 Mont. v. Haaland,* 50 F.4th 1254 (9th Cir. 2022) (citation and quotation omitted).

## SUMMARY OF THE ARGUMENT

Damages is an essential element of a cause of action for breach of contract and any claim for breach of contract that fails to allege legally cognizable damages must fail as a matter of law. Trusper's contention that it is entitled to recover consequential damages in the form of "time and attorney's fees" as well as alleged "reputational harm" arising from having to defend itself from Wareka's copyright infringement lawsuit is not legally sufficient to satisfy the damages element of its Counterclaim for Breach of Contract.

After Wareka moved to dismiss Trusper's Counterclaim under the California anti-SLAPP statute, the District Court incorrectly held that Trusper had plausibly established the essential element of damages by relying on what it admitted was non-binding dicta while ignoring clear binding precedent that would have compelled a decision in Wareka's favor.

The District Court also erred by analyzing the damages issue under the incorrect law. The Prior Settlement Agreement at issue contains a choice of law provision stating that New York law controls. Nonetheless, the District Court ignored the choice of law provision and incorrectly applied California law when analyzing Trusper's Counterclaim. This error was further compounded when the District Court improperly invoked the doctrine of "nominal damages" to excuse Trusper's failure to allege a legally cognizable harm.

Finally, the District Court also erred when it entered summary judgment in favor of Trusper on its Counterclaim for Breach of Contract because Trusper never actually raised any of the essential elements of breach in its summary judgment motion. Rather, Trusper's motion was primarily focused on the threshold issue of whether it could avail itself of the release provision of the Prior Settlement Agreement. Despite Trusper not having carried its burdens of production and persuasion to establish that a breach had occurred, the District Court entered

summary judgment in favor of Trusper while later opining that Trusper's burden to establish the essential elements of its Counterclaim was merely "ministerial."

Not only did Trusper fail to establish the elements of its Counterclaim, but Wareka proffered numerous pieces of evidence that established clear disputes of material fact which should have precluded summary judgment altogether.

Because the District Court erred in failing to grant Wareka's anti-SLAPP motion and to deny Trusper's motion to summary judgment, the District Court must be reversed, and the case remanded.

# ARGUMENT

## I. THE ANTI-SLAPP ORDER SHOULD BE REVERSED BECAUSE THE DISTRICT COURT FAILED TO APPLY THE CORRECT LAW

California procedural law[4] provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that "masquerade as ordinary lawsuits" but are intended to deter litigants "from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (citations and quotations omitted).

To prevail on an anti-SLAPP motion, the moving party must make a *prima facie* showing that the non-moving party's suit arises from an act in furtherance of the moving party's constitutional right of free speech or to petition. *Ibid.* (citation omitted). The burden then shifts to the non-moving party, to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal. *Ibid.* (citation omitted). When an anti-SLAPP motion to strike challenges the legal sufficiency of a claim, a district court applies the Rule 12(b)(6) standard and considers whether a claim is properly stated. *Planned Parenthood Fed'n of Am., Inc.*

---

[4] Wareka contends that the Prior Settlement Agreement contains a choice of law provision requiring that the substantive law of New York be applied when analyzing Trusper's Counterclaim for Breach of Contract. *See* Section I.B, *infra*. Although New York *substantive* law is applied in determining the viability of Trusper's Counterclaim for breach, California *procedural* laws, including the anti-SLAPP procedure, may be invoked since Trusper's Counterclaim was a state law claim brought in a court sitting in California. *See United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000 (N.D. Cal., Nov. 10, 2015) (There is "no reason to doubt that a California state court would apply California's anti-SLAPP rule as a matter of its own procedural rules, even if it applied New York substantive law to the merits of the [case]" citing *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 144-48 (2d Cir. 2013).). Trusper has never disputed that California's anti-SLAPP statute can be applied to strike its Counterclaim.

*v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018).

In response to Trusper's filing of its Counterclaim for Breach of Contract, Wareka filed an anti-SLAPP Motion to Strike or in the Alternative To Dismiss the Counterclaim pursuant to 12(b)(6) on the basis that Trusper had failed to allege cognizable damages. 3-ER-328-348. The parties did not dispute that Wareka has satisfied the first prong of the anti-SLAPP analysis.

As to the second prong, the District Court erred in three respects. First, the District Court ignored a clear choice of law provision in the Prior Settlement Agreement requiring the application of New York law, and instead conducted its analysis under California law. Second, the District Court incorrectly concluded that attorneys' fees could constitute consequential damages for breach of contract even where no statute or contract provision permitted an award of fees. Third, the District Court improperly concluded that the availability of nominal damages alone allowed Trusper to satisfy the damages element of its Counterclaim for Breach of Contract.

As explained below, the District Court should be reversed, and the case remanded.

## A. The Parties Do No Dispute That Wareka Properly Established The First Prong Of The Anti-SLAPP Analysis.

The California Supreme Court has recognized, "[a] claim for relief filed in federal district court indisputably is a 'statement or writing made before a … judicial proceeding.' *Navellier v. Sletten*, 29 Cal. 4th 82, 89-92 (2002) ("Plaintiffs' cause of action for breach of contract is grounded in allegations that Sletten filed counterclaims in the federal action.") (quotation and citation omitted); *see also Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999) ("As pertinent here, the constitutional right to petition … includes the basic act of filing litigation." (citation and quotation omitted, ellipsis in original)).

In *Fugnetti v. Bird B Gone*, 2019 U.S. Dist. LEXIS 208351 (C.D. Cal. Sep. 16, 2019) a photographer sued a bird deterrent company alleging copyright infringement arising out of a graphic of a flying pigeon that the photographer had created for the company years prior. *Id.* at *1-3. The bird deterrent company filed a series of counterclaims for breach of contract alleging that the photographer had orally transferred the copyright to the flying pigeon graphic and had breached the oral agreement by suing the company for infringement. *Ibid.* In response to the counterclaims, the photographer filed an anti-SLAPP motion. *Ibid.*

In analyzing the "arising out of" prong of the anti-SLAPP motion, the *Fugnetti* court recognized that because the alleged breach was the filing of the infringement lawsuit, the counterclaims necessarily "arise from an act in furtherance of Fugnetti's right to petition" thus satisfying the first prong of the anti-SLAPP analysis. *Id.* at *5-6.

Similarly, Trusper explicitly stated that its Counterclaim for Breach of Contract is premised on Wareka's filing of a copyright infringement claim:

> "[Trusper]'s breach of contract counterclaim alleges that said copyright claim should not have been brought in the first place because it was released under a prior settlement agreement and that Wareka's failure to honor that contractual release is a breach of contract against [Trusper], who is an intended third-party beneficiary as a releasee under the prior settlement agreement."

2-ER-160, 169-166.

Because the constitutional right of petition encompasses "the basic act of filing litigation," *see Navellier*, 29 Cal.4th at p. 90, Wareka properly established that Trusper's Counterclaim for Breach of Contract arises out of protected activity, thus satisfying first prong of the anti-SLAPP analysis.

In its anti-SLAPP Order, the District Court correctly concluded that "Wareka has shown that Trusper's counterclaim arises out of her First Amendment right to

petition." 1-ER-3. Indeed, Trusper effectively conceded that point in its briefing. *See* 3-ER-261-262. As such, the only issue for this Court to determine is whether Wareka has satisfied the second prong of the anti-SLAPP analysis.

As explained more fully below, the District Court committed numerous reversible errors when analyzing the sufficieny of Trusper's Counterclaim for Breach of Contract. As such, the District Court should be reversed, and the case remanded.

**B.    Despite A Choice Of Law Provision Requiring New York Law Be Applied, The District Court Erroneously Applied California Law.**

Trusper's Counterclaim was premised on an alleged breach of the Prior Settlement Agreement executed between Warkea and Mai Couture in the form of Wareka filing a copyright infringement claim against Trusper that had allegedly already been released. *See* 2-ER-160, 164-166. As its sole damages resulting from the alleged breach, Trusper claims consequential damages in the form of "time and attorney's fees" of having to defend against Wareka's infringement suit as well as alleged "reputational harm" arising from being labeled as copyright infringer. 2-ER-166.

The Prior Settlement Agreement executed between Warkea and Mai Couture did not contain an attorneys' fees provision, but did contain an exclusive venue and choice of law provision stating that any action for breach would be brought exclusively in New York and should be interpreted according to the laws of New York. *See* 2-ER-68-71. Thus, under the express terms of the Prior Settlement Agreement, the District Court was required to analyze Trusper's Counterclaim for Breach of Contract under New York law.

In its anti-SLAPP Order, the District Court ignored the choice of law provision in the Prior Settlement Agreement and based its decision solely on California law. *See* 1-ER-4-5. The District Court found that there was "convincing evidence" that the

California Supreme Court would hold that attorneys' fees are recoverable as consequential damages in a breach of contract action and that even if they were not, Trusper could recover nominal damages. *Ibid.*

Even if the District Court's analysis would be correct under California law, the District Court's reasoning constitutes reversable error since the anti-SLAPP Order relied on the application of incorrect law -- the express provisions of the Prior Settlement Agreement called for New York law and not California law to control. *See Berglee v. First Nat'l Bank*, 1993 U.S. App. LEXIS 4937, *5 (9th Cir., 1993) (judgment reversed where district court mistakenly applied Montana law in contravention of choice of law provision calling for application of South Dakota law).

Under New York law, "[p]roof of damages is an essential element of a claim for breach of contract." *iGo Mktg. & Entertainment, LLC v. Hartbeat Prods.*, LLC, 217 A.D.3d 753, 754 (App. Div. 2nd Dept. 2023) (citation omitted). In contrast to the District Court's holding under California law, under New York law, attorneys' fees and reputational harm are not legally cognizable damages in a breach of contract claim. *See* 3-ER-241-242; *see also Congel v. Malfitano*, 31 N.Y.3d 272, 290-92 (2018) (stating that under New York law fees cannot be recovered for breach absent statute or contractual provision and observing that "Plaintiffs' approach would mean that fees could be awarded to the victorious party in any breach of contract litigation" creating an exception "so large as to swallow the American Rule."); *Karetsos v. Cheung,* 670 F. Supp. 111, 115 (S.D.N.Y. 1987) (holding that damage to reputational harm not recoverable in New York for breach of contract and collecting cases).

Had the District Court applied the proper analysis under New York law instead of the incorrect analysis under California law, it would have been required to find that Trusper's Counterclaim failed as a matter of law because Trusper could not establish the essential element of damages since consequential damages in the form of attorneys' fees and reputational harm are not legally available under New York law.

Therefore, the District Court's failure to apply New York law in accordance with the choice of law provision contained in the Prior Settlement Agreement was clear error and should be reversed.

Wareka anticipates that Trusper will argue that Wareka has waived her ability to rely on the choice of law provision in the Prior Settlement Agreement. However, during the anti-SLAPP proceedings and post summary judgment proceedings, Wareka consistently called attention to the choice of law provision and repeatedly invoked[5] New York law. In her anti-SLAPP motion, Wareka specifically pointed out that the Prior Settlement Agreement contained a choice of law provision and stated that New York law should be applied. *See* 3-ER-338, fn. 1. At the hearing on the anti-SLAPP motion, Wareka's attorney also referenced the applicability of New York law, and the District Court acknowledged that "there's some question about whether [Trusper's Counterclaim is] governed by California or New York law." *See* 3-ER-234, 239. However, the District Court primarily focused on the issue of whether Trusper could recover nominal damages for breach and ordered the parties to brief the issue. 3-ER-209.

In her supplemental brief, Wareka again argued that "under both New York and California law" the damages sought by Trusper were legally unavailable and could not be recovered in any instance, whether the amount is nominal, substantial, or otherwise. 3-ER-205. Finally, during post summary judgment proceedings,[6] counsel for Wareka

_____

[5] Wareka also advanced alternative arguments applying California law in the event that the District Court concluded that the choice of law provision was not enforceable. *See* Section I.C, *infra*. However, the District Court's anti-SLAPP Order never addressed the choice of law provision contained in the Prior Settlement Agreement and simply applied California law.

[6] Notably, in its summary judgment motion Trusper conceded that the Prior Settlement Agreement was to be interpreted "Under New York law, which governs the Agreement." *See* 2-ER-192.

again raised the issue of the choice of law provision requiring that New York law govern the proceedings. *See* 2-ER-17-20.

Because Wareka consistently raised the choice of law issue during the relevant proceedings, Wareka has not waived her right to rely on the choice of law provision in the Prior Settlement Agreement that called for New York law to be applied to Trusper's Counterclaim.

In conclusion, the District Court ignored the choice of law provision in the Prior Settlement Agreement and incorrectly applied California law when analyzing Trusper's Counterclaim for Breach of Contract. Had New York law been applied, the District Court would have been compelled to grant Wareka's anti-SLAPP motion. Therefore, the District Court should be reversed, and the case remanded.

### C. Even Under California Law, The District Court Erred By Finding That Attorneys' Fees Are Recoverable As Contract Damages.

Although the District Court's anti-SLAPP Order did not expressly make a finding as to the choice of law provision, the District Court rendered its decision solely under California contract law. *See* 1-ER-3-5. Even assuming that the application of California law rather than New York law was correct, the District Court must still be reversed because the District Court incorrectly applied California law to Trusper's Counterclaim.

Under California law, attorneys' fees are recoverable by a party only if specifically provided for by a statute, or if authorized by an express agreement between the parties. Cal. Code Civ. Proc. § 1021. In its Counterclaim, Trusper alleged that it suffered consequential damages in the form of "time and attorney's fees" related to having to defend against Wareka's infringement suit. 2-ER-166. The Prior Settlement Agreement at issue did not contain an attorneys' fees provisions, *see* 2-ER-68-71, nor did Trusper's Counterclaim identify any statutory basis for seeking fees as damages for its Counterclaim.

In its anti-SLAPP Order, the District Court acknowledged that California's intermediate appellate courts have held that attorneys' fees cannot be considered damages for a breach of contract. *See* 1-ER-4-5; *see also Olson,* 113 Cal.App.3d at 67 ("[A]ppellant repudiated the settlement, respondents were forced to continue to employ attorneys and [argued] that therefore their attorney fees logically flow as damages from the breach … [T]o allow respondents to recover their attorney's fees would be contrary to the well-established rule that in the absence of a special statute or a contractual provision for attorney's fees, the prevailing party is not entitled to recover attorney's fees from his opponent … Appellant breached his contract, and respondents had to employ attorneys in order to enforce that contract. We think this case is not basically different from any other contract action where the nonbreaching party is forced to employ an attorney to enforce the contract but is not entitled to his attorney's fees as damages."); *Navellier,* 106 Cal.App.4th at 777 ("Olson's conclusion is consistent with the prevailing rule that such fees and costs are not recoverable in an action for breach of a release unless the agreement or a statute specifically provides for them.").

Nevertheless, the District Court stated that it would depart from the prevailing rule because there was "convincing evidence" that the California Supreme Court would decide the issue differently if presented the opportunity. 1-ER-4-5. In reaching this conclusion, the District Court expressed agreement with what it conceded was "dicta" in the case *Copenbarger v. Morris Cerullo World Evangelism, Inc*., 29 Cal. App. 5th 1 (2018) as cited in a dissenting opinion filed in the unpublished case *Walker v. Ford Motor Co*., 768 Fed. Appx. 601 (9th Cir. 2019) (Bennett, J., dissenting). *See* 1-ER-4, 3-ER-230-231. The District Court's reliance on *Copenbarger* and the dissent in *Walker* as "convincing evidence" of how the California Supreme Court would rule on the issue of attorneys' fees as consequential damages was error.

The majority holding in *Walker* specifically recognized that "California's

intermediate appellate courts do not permit attorney's fees expended in the continuation of the underlying action as damages for breach of a settlement agreement," *Walker*, 768 Fed. Appx. at 601, which is the exact opposite conclusion that the District Court reached. Although *Walker* itself is not binding, it cited to well-established California precedent that specifically rejected the District Court's reasoning. *See also Chan v. Curran,* 237 Cal.App.4th 601, 624 (2015) ("Damages are specifically defined in California law and do not include the attorney fees incurred in prosecuting the lawsuit to recover them.").

Instead of deferring to binding California precedents cited by the *Walker* majority, the District Court instead chose to base its holding on the admitted "dicta" in the *Copenbarger* decision as outline in the unpublished *Walker* dissent as "convinving evidence" that the California Supreme Court would depart from decades of precedent. However, even the reasoning of *Copenbarger* does not support the District Court's conclusion.

*Copenbarger* concerned a settlement agreement intended to resolve an unlawful detainer action. *Copenbarger,* 29 Cal. App. 5th at 6. The attorneys' fees sought as damages in *Copenbarger* were incurred in a separate lawsuit, and the alleged breach of contract was the failure to dismiss that separate lawsuit. *Id.* at 10. The settlement agreement included an attorneys' fee provision and expressly permitted recovery of attorneys' fees as damages. *Ibid*. Critically, the court distinguished these damages from attorneys' fees incurred in litigating the breach of contract action itself recognizing that attorneys' fees incurred in enforcing the settlement agreement would be "costs of suit because they were incurred in the litigation in which they were sought." *Ibid*. citing Cal. Code Civ. Proc. § 1033.5.

In this case, Trusper seeks attorneys' fees as damages resulting from the very litigation in which its fees are sought --- a scenario which *Copenbarger* expressly recognized was impermissible. Additionally, unlike the contract in *Copenbarger*

which included an express attorneys' fee provision and permitted recovery of fees as damages, the Prior Settlement Agreement at issue in this case contains no such provisions. *See* 2-ER-68-71.

Not only does the dicta in *Copenbarger* fail to demonstrate "convincing evidence" that the California Supreme Court would depart from the well-established rule prohibiting the recovery of attorneys' fees as consequential damages in a breach of contract case, but the facts of *Copenbarger* are distinguishable from the facts giving rise to Trusper's Counterclaim for Breach of Contract asserted against Wareka. Had the District Court properly applied California law, it would have been required to find that Trusper claim of attorneys' fees as consequential damages for breach of contract failed as a matter of law and that Wareka had established the second prong of the anti-SLAPP analysis.

The District Court's reliance on the reasoning of *Copenbarger* to justify departing from prior California case law was erroneous and the District Court should be reversed, and the case remanded.

### D. The District Court Also Erred By Invoking Nominal Damages For A Harm That Was Not Legally Cognizable.

In a footnote to its anti-SLAPP Order, the District Court also determined that even if Trusper could not claim attorneys' fees as consequential damages for breach of contract, it could still satisfy the essential "damages" element of its Counterclaim since it could recover nominal damages in acknowledgment of its breach. *See* 1-ER-5. In support of this proposition, the District Court relied on Cal. Civ. Code § 3360 and the case *In re Facebook Privacy Litigation*, 192 F. Supp. 3d 1053, 1061-62 (N.D. Cal. 2016).

The District Court's reliance on Cal. Civ. Code § 3360 for the proposition that nominal damages satisfies the "damages" element of a breach of contract claim was erroneous. An award of nominal damages goes to the *amount* of damages suffered and

does not speak to the issue of whether the damages sought are legally cognizable. Cal. Civ. Code § 3360 "sets forth the rule that a plaintiff who has suffered an injury, but whose damages are speculative, is entitled to nominal damages. But the statute does not relieve the plaintiff of proving injury." *Opperman v. Path, Inc.,* 84 F. Supp. 3d 962, 990-91 (N.D. Cal. 2015). To obtain nominal damages, a plaintiff needs to have suffered some sort of damage cognizable under contract law. *See Roberts v. W. Pac. R. Co.*, 142 Cal. App. 2d 317, 323 (1956) (reasoning that since plaintiff suffered no actual damages resulting from alleged breach, he was not entitled to nominal damages); 1 Matthew Bender Practice Guide: California Contract Litigation, Ch. 7, § 7.04 ("Nominal damages are different from no damages at all, and a case involving the latter should not be filed."). An award of nominal damages is only possible where the plaintiff has suffered some legally recognized harm but it is not substantial, or where the damages are difficult to quantify. *Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088 (1972); 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 878.

Under binding Ninth Circuit precedent, a plaintiff must establish "appreciable and actual damage" to establish contractual damages. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). The Court in *Ruiz v. Gap, Inc.,* 380 Fed. Appx. 689, 692 (9th Cir. 2010) noted that the Ninth Circuit has definitively ruled on the issue of whether nominal damages alone suffice:

> On appeal, Ruiz contends that the district court erred because nominal damages are available in contract actions in California. …
>
> [O]ur circuit has already examined that question, and concluded that "under California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp*., 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 64 Cal. Rptr. 187, 191 (Cal. Ct. App. 1967) ("A breach of contract without damage is not actionable.")).
>
> *Aguilera* binds us, as it did the district court.

*Ruiz,* 380 Fed. Appx. at 692; *see also Cabrera v. Google LLC,* 2023 WL 5279463, 2023 U.S. Dist. LEXIS 142643, fn. 5 (N.D. Cal., Aug. 15, 2023) (Observing that

*Aguilera* remains binding Ninth Circuit precedent even where some California courts have suggested that nominal damages may be available for breach).

The issue presented to the District Court was whether Trusper had stated a legally sufficient cause of action for breach of contract. The only damages sought by Trusper for its Counterclaim were attorneys' fees and damages for reputational harm, both of which are not legally recognized categories of damages for a breach of contract claim. *See* Sections I.B-C, *supra*. Thus, even if Trusper were successful in proving that it was forced to incur attorneys' fees or that its reputation was harmed, these categories of damages are not legally available in a breach of contract action, and *cannot* be recovered in any instance, whether the amount is nominal, substantial, or otherwise.

In citing to Cal. Civ. Code § 3360 the District Court incorrectly conflated the statutory authority to award a nominal *amount* of damages where the amount may be speculative or de minimis with the requirement that a litigant establish the availability of a legally cognizable *category* of damages to be awarded. *See* Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."). Because the two types of damages alleged by Trusper in its Counterclaim are not permitted to be recovered for a breach of contract, it would be legally impossible for Trusper to be awarded even a nominal amount of such damages. Since the existence of damages is an essential element, Trusper's Counterclaim for Breach of Contract fails as a matter of law because Trusper has not plausibly pled entitlement to any legally recognized category of damages.

The District Court's reliance on *In re Facebook Privacy Litigation*, 192 F. Supp. 3d 1053, 1061-62 (N.D. Cal. 2016) was also misplaced. The court in *Facebook* analyzed the issue of nominal damages in the context of whether the party seeking nominal damages had alleged a sufficient injury to confer Article III standing, and

not whether a claim for breach had been properly stated. *Ibid.* Regardless, the plaintiff in Facebook specifically alleged in its complaint that it was seeking "nominal damages based on Facebook's breach," *Id.* at fn. 1, whereas Trusper's Counterclaim does not allege that it seeks nominal damages. 2-ER-159-169.

Because the only damages alleged by Trusper in its Counterclaim are legally unavailable for a breach of contract, Trusper is legally prohibited from recovering even a nominal amount of such damages. Absent a legally cognizable claim for damages, Trusper's Counterclaim must fail as a matter of law. The District Court's conclusion that Trusper had plausibly stated a claim for breach due to the availability of nominal damages was error.

In conclusion, the District Court should be reversed, and the case remanded.

### E. If Anti-SLAPP Relief Is Inappropriate, Wareka Still Prevails Under 12(b)(6).

Even if relief under the anti-SLAPP statute is not warranted, Wareka may still prevail under a 12(b)(6) analysis. Here, the District Court correctly determined that Wareka anti-SLAPP motion would be construed as challenging the sufficiency of Trusper's Counterclaim, which is akin to a 12(b)(6) motion to dismiss. *See* 1-ER-3 citing *Planned Parenthood*, 890 F.3d at 834. As explained in section I.C-D, *supra*, the District Court erred in determining that Trusper has properly stated a claim for breach of contract. Thus, under a 12(b)(6) analysis Trusper's Counterclaim fails.

Therefore, the District Court should be reversed, and the case remanded with orders to dismiss Trusper's Counterclaim.

## II. THE DISTRICT COURT INCORRECTLY ENTERED SUMMARY JUDGMENT ON TRUSPER'S COUNTERCLAIM FOR BREACH

Regardless of whether the District Court's anti-SLAPP Order is affirmed, this Court must also reverse and remand the District Court's Summary Judgment Order because disputes of material fact exists as to whether Trusper can avail itself of the

release provisions of the Prior Settlement Agreement and because Trusper failed to establish any of the essential elements of the Counterclaim for Breach of Contract.

### A. The Record Contains Multiple Disputes Of Material Fact As To Whether Wareka's Claim Against Trusper Was Released.

Trusper's Counterclaim is premised on Wareka's alleged breach of the Prior Settlement Agreement which allegedly occurred when Wareka sued Trusper for copyright infringement for using the Mulder Photograph in the Musely Posts which Trusper alleges was released under the Prior Settlement Agreement. *See* 2-ER-160, 164-176.

Trusper was not a party to the Prior Settlement Agreement. *See* 2-ER-67-71. Rather, the Prior Settlement Agreement was executed between Wareka and non-party Mai Couture. *Ibid*. The Prior Settlement Agreement calls for a release of all claims related to the Mulder Photograph for "all those acting in concert or participation with [Mai Couture] or under their direction or control." *Ibid*. Thus, before Trusper can establish that a breach occurred, it must first establish, as a threshold matter, that the Musely Posts that appeared on the Trusper controlled social media pages were created "in concert or participation with … or under the[] direction or control" of Mai Couture and therefore released under the Prior Settlement Agreement between Wareka and Mai Couture.

Trusper's sole evidence that the Musely Post was created "in concert and participation" with Mai Couture and therefore released under the Prior Settlement Agreement was the declaration of Jack Jia previously submitted in connection with the anti-SLAPP stating only that Trusper "believes" that Mai Couture directly uploaded the Mulder Photograph to the Musely social media pages or that "it is [also] possible" that the Mulder Photograph was supplied directly to Trusper who then posted the Mulder Photograph itself. *See* 3-ER-281-282.

A movant for summary judgment cannot carry its burden based solely on the "belief" that certain facts exists in the absence of an evidentiary basis supporting that belief. *See Richardson v. Runnels*, 594 F.3d 666, 671-72 (9th Cir. 2010) (concluding that movants had failed to carry their burden because it was insufficient "for prison officials simply to believe there to be a link between an individual incident perpetrated by one or two inmates, and the risk of violence from all the [prisoners of one race] in Facility D … [with] no evidentiary showing at all concerning the basis for" their belief).

Here, as a threshold matter, Jia's unsupported "belief" that Mai Couture directly uploaded the Mulder Photograph to the Musely social media pages or that that the Mulder Photograph was supplied directly to Trusper who then posted the Mulder Photograph itself is insufficient for Trusper to carry its burden in the absence of evidence supporting the basis for Jia's "belief". *See* 3-ER-281-282.

Even if Jia's unsupported testimony was sufficient for Trusper to carry its initial burden, the District Court ignored numerous pieces of evidence that Wareka provided to dispute Jia's testimony that Musely Posts as a result.

First, Wareka cited to a 2020 email chain with Mai Couture inquiring whether Mai Couture had, in fact, provided the Mulder Photograph to Trusper. 2-ER-73-74. Mai Couture responded by stating "We do not provide Musely or any retailers images for social [media.] The only images we provide are our product images for their platform." *Ibid.* Indeed, screenshots of the Mai Couture page on the Musely Platform corroborated Tran's statement by showing only images of the packaging of Mai Couture's "Glow Duo" highlighter paper product. *See* 2-ER-177.

Similarly, Wareka also cited to a February 2022 email in which Wareka's agent again reached to Mai Couture to confirm that Mai Couture did not provide the Mulder Photograph to Trusper or otherwise access or post the Mulder Photograph on the social

media pages for the Musely Platform. Mai Couture responded that "[w]e did not provide [the] image nor access Musely's account."  2-ER-73.

Viewing this evidence in the light most favorable to Wareka, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255-58 (1986), these emails demonstrate a dispute of material fact as to whether the Trusper's Musely Posts were created in concert or participation with Mai Couture --- Jia states that Mai Couture created the Musely posts or possibly provided the Mulder Photograph to Trusper and Mai Couture's emails indicate that it never had access to Trusper's social media accounts and never provided the Mulder Photograph to Trusper.

Second, an email from a Trusper employee also demonstrates a dispute of material fact regarding the creation of the Musely Posts. In September 2021, the marketing director for the Musely Platform, reached out to Mai Couture. In the email exchange, the marketing director stated "We're now trying to figure out why the [Mulder Photograph] was posted on our Instagram … Do you remember any context around **why Musely reposted it** --- was it sent to us by your team?" 2-ER-179 (emphasis added).

In his declaration, Jia states his firm "belief" that Mai Couture directly uploaded the Mulder Photograph to the Musely social media pages. *See* 3-ER-281. However, the September 2021 email states that Trusper "reposted [the Mulder Photograph]" rather than Mai Couture being the party responsible for uploading it.

These key pieces of evidence demonstrate a clear factual dispute as to whether the Musely Posts containing the Mulder Photograph were created "in concert and participation" with Mai Couture and were released under the Prior Settlement Agreement, or whether the Musely Posts were created independently by Trusper or some other third-party and therefore not subject to the release provision of the Prior Settlement Agreement.

In its three-paragraph ruling, the District Court stated that there were no disputes of material fact because "[e]ven if Trusper independently obtained the photograph and posted it on its own social media channels, no reasonable juror could conclude that Trusper did not act in concert or participation with Mai [Couture]" since the Services Agreement between Trusper and Mai Couture contemplated the promotion of Mai Couture's products on Trusper's social media pages. 1-ER-7. However, the District Court's characterization of the language of the Services Agreement is erroneous.

The Services Agreement contains only one sentence that is arguably applicable to the facts of this case. The Services Agreement states that "During the Beta Period" of December 2015 to March 2016, Mai Couture agrees to "create several Shopable Tips per week for promotional tests, and share on social channels." 2-ER-126.

The Services Agreement is silent as to the exchange of photographs between Mai Couture and Trusper and is also silent as to Mai Couture's ability to access or not access Trusper's social media accounts. *Ibid*. Similarly, the Services Agreement only vaguely references "share on social channels" but does not clearly refer to *Trusper's* social channels as opposed to the social channels of the individual merchants such as Mai Couture. Indeed, the record shows that Mai Couture created various posts on its own social media channels to market the same products it sold through the Musely Platform. *See* 2-ER-71.

Finally, and perhaps most importantly, the Services Agreement only required Mai Couture to create Shopable Tips for promotional tests and social media shares "During the Beta Period" of December 2015 to March 2016. 2-ER-126. The Musely Posts featuring the Mulder Photograph were created on July 19, 2019, over three years after the "Beta Period" outlined in the Services Agreement. Thus, to the extent that the Services Agreement constitutes proof that Trusper and Mai Couture were

generally acting "in concert and participation" with one another, such a relationship only existed during the "Beta Period" which terminated over three years before the Musely Posts were created.

Therefore, it was error for the District Court to rely so heavily on the alleged relationship between Mai Couture and Trusper created by the Services Agreement where the terms of the agreement itself were vague as to the exact nature of the relationship, and the relationship commenced and terminated years before the Musely Posts were created. Given the vague language of the Services Agreement and the timeframe outlined for the "Beta Period" there is a clear dispute of material fact as to whether the Services Agreement established that Trusper was acting in concert and participation with Mai Couture when the Musely Posts were created.

In conclusion, the District Court erred when it concluded that there were no disputes of material fact as to whether the Musely Posts were created in concert and participation with Mai Couture. As such, the District Court should be reversed, and the case remanded.

## B. The District Court Erred In Granting Summary Judgment On The Counterclaim Because Trusper Did Not Properly Raise It.

To prevail on summary judgment the party with the burden of proof and persuasion at trial has the initial burden to establish, beyond controversy, the essential elements of its claim. *See Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

Despite asserting that it was moving for summary judgment as to its Counterclaim for Breach of Contract, the majority of Trusper's summary judgment motion was dedicated to the threshold issue of whether the release provision of the Prior Settlement Agreement was applicable to Trusper. Trusper's motion failed to discuss any of the essential elements of breach of contract and failed to demonstrate

how the specific facts[7] of the case established the essential elements of its Counterclaim. 2-ER-54, 184-195.

Compounding the issue, Trusper's summary judgment motion failed to even identify whether the Trusper was asserting a breach under New York or California law. *Ibid.* In one section of Trusper's motion, Trusper acknowledged that the choice of law provision called for the application of New York law, and cited only to New York cases to support its argument. *See* 2-ER-192. In another section of its motion, Trusper asserted that it was entitled to damages and cited only to California cases to support its argument. *See* 2-ER-194.

In its Summary Judgment Order, the District Court ruled exclusively on the threshold issue of whether Trusper was acting "in concert or participation" with Mai Couture for purposes of determining whether Trusper could rely on the release provisions of the Prior Settlement Agreement. 1-ER-7-8. The Summary Judgment Order did not discuss any of Trusper's Counterclaim for Breach of Contract, nor did it analyze how Trusper had established those elements. *Ibid.* Instead, after determining that Trusper could avail itself of the Prior Settlement Agreement, the District Court simply decided to set a case management conference to discuss adjudication of damages for Trusper's Breach of Contract Counterclaim. 1-ER-8.

The District Court's ruling did not cite to any case law or statute supporting its ruling. 1-ER-7-8.

At the case management conference, counsel for Wareka advised the District Court that he believed that because Trusper never argued any of the essential elements

---

[7] Trusper did not file any supporting documentation or evidence with its summary judgment motion, but the motion itself did contain various citations to documents, some of which were previously filed in various proceedings. Some of the citations, however, were to documents such as discovery responses that appear to have never been made part of the record. *See* 2-ER-49, 186-187.

of its Counterclaim on summary judgment, that such issues remained to be decided and that it would be improper to simply decide the damages amount to be awarded to Trusper. 2-ER-15-20. The District Court responded by suggesting that its Summary Judgment Order was completely dispositive because establishing the essential elements of Trusper's Counterclaim was "basically ministerial." 2-ER-18. The District Court also stated that it had made its decision in the Summary Judgment Order by exclusively applying California law because Wareka has "probably waived the right to argue that New York law applies." 2-ER-20-21. After a brief discussion with counsel, the District Court seemingly reversed itself stating that "we'll try the [breach of contract] issue in front of a jury." 2-ER-21.

The District Court erred in granting summary judgment as to Trusper's Counterclaim since Trusper failed to include any argument, analysis, or evidence to establish the essential elements of its Counterclaim. By neglecting to establish the essential elements of its Counterclaim, Trusper failed to carry its burdens or proof and persuasion.

Even if Trusper had properly sought summary judgment as to its Counterclaim, the District Court separately erred by adjudicating the Counterclaim under California law instead of New York law. Although the Summary Judgment Order did not contain any citations of statutory or case law, the District Court acknowledged at the subsequent case management conference that it had rendered its decision under California law. 2-ER-20-21. As explained in Section I.B, *supra*, the Prior Settlement Agreement contained a choice of law provision requiring that New York law be applied to adjudicating the Counterclaim. By applying the incorrect law, the District Court erred.

As such, the District Court should be reversed, and the case remanded.

## III. CONCLUSION

For the foregoing reasons, the judgment of the District Court's anti-SLAPP Order and Summary Judgment Order should be reversed, and the case remanded for further proceedings.

Dated: October 18, 2023           Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6(b), Appellant Tamara Wareka is not aware of any related cases.

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,538 words and 864 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: October 18, 2023                    Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: October 18, 2023           Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
Cal. Bar No. 311668
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile