No. 23-15930

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

TAMARA WAREKA,

*Plaintiff-Appellant,*

v.

TRUSPER, INC.,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Northern District of California
No. 3:21-cv-02682-VC
Hon. Vince Chhabria

_____

## DEFENDANT-APPELLEE'S ANSWERING BRIEF

_____

Gary L. Eastman
Eastman IP
1550 Hotel Circle N., Ste. 330
San Diego, CA 92108
Tel:  (619) 230-1144
gary@eastmanip.com

Sara Gold
Eastman IP
1550 Hotel Circle N., Ste. 330
San Diego, CA 92108
Tel:  (619) 230-1144
sara@eastmanip.com

*Attorneys for Defendant-Appellee
Trusper, Inc.*

## DISCLOSURE STATEMENT

Trusper, Inc. has no parent or subsidiary business entity.

Date: December 18, 2023

EASTMAN IP

s/ Gary Eastman

Gary L. Eastman, Esq.
Sara Gold, Esq.
*Attorneys for Appellee*
*Trusper, Inc.*

i

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ……………………………………………… i

TABLE OF CONTENTS ………………………………………………… ii

TABLE OF AUTHORITIES …………………………………………… iv

INTRODUCTION ………………………………………………………… 1

JURISDICTIONAL STATEMENT ………………………………………. 3

ISSUE PRESENTED …………………………………………………… 4

STATEMENT OF THE CASE …………………………………………... 5

SUMMARY OF ARGUMENT…………………………………………... 8

STANDARD OF REVIEW ...…………………………………………… 9

ARGUMENT …………………………………………………………… 10

    I.     The Wareka-Mai Couture settlement agreement barred Wareka's lawsuit against Trusper based on Trusper's publication of the subject image in tandem with Mai Couture ...………………………………………………… 12

        A. The record below contains all of the undisputed facts necessary to establish that the settlement release barred the copyright claim against Trusper …...……………………………………………. 13

        B. Any reasonable factfinder would conclude that the settlement agreement applied to the posts published by Mai Couture's promotional platform Trusper …………………………………….. 15

    II.    California law should be construed to permit recovery of attorneys' fees as compensatory damages where the avoidance of litigation was the bargained-for benefit ………………………………………… 18

A. A third-party beneficiary like Trusper is equally entitled to seek contract damages where the violated provision entailed the avoidance of litigation…………………………………………….. 19

B. The American rule does not apply where attorneys' fees are the subject of the action rather than costs of suit………………… 21

C. Based on the weight of the authority and compelling policy considerations, the California Supreme Court would adopt the lower court's approach…………………………………….. 23

III. The New York choice-of-law clause does not govern the damages issue, and, in any event, Wareka forfeited the issue under the doctrines of invited error and waiver. ……………………………………… 27

IV. Any possible error regarding Trusper's entitlement to its copyright defense fees as contract damages is harmless, because Trusper would be equally entitled to the same fees as a prevailing party under the Copyright Act. ……………………………………………………. 30

CONCLUSION …………………………………………………….. 36

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                           **Page(s)**

*BankAmerica Pension Plan v. McMath*, 206 F.3d 821 (9th Cir. 2000)...... 14

*Bolton v. McKinney*, 855 S.E.2d 853 (Va. 2021) ...................................24, 25

*Copenbarger v. Morris Cerullo World Evangelism, Inc.*,
    29 Cal. App. 5th 1 (Ct. App. 2018) ...................................................23, 24

*Design Basics, LLC v. Eenigenburg Builders, Inc.*,
    2021 U.S. Dist. LEXIS 185368 (N.D. Ind. Sept. 28, 2021)...................31

*Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270 (9th Cir. 1983)............18

*Fisher v. Biozone Pharms.*, Inc.,
    2017 U.S. Dist. LEXIS 42822 (N.D. Cal. Mar. 23, 2017).....................26

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................. 31

*Ganske v. WRS Group, Inc.*, 2007 Tex. App. LEXIS 2991
    (Tex. Ct. App. Apr. 18, 2007) ..............................................................25

*Golden Eagle Ins. Co. v. Travelers Cos.*,
    103 F.3d 750 (9th Cir. 1996).........................................................30, 35

*Houng v. Tatung Co.*, 499 B.R. 751 (C.D. Cal. 2013). ................................28

*In re Facebook, Inc. Consumer Privacy Litig.*,
    2023 U.S. Dist. LEXIS 22328 (N.D. Cal. Feb. 9, 2023)......................36

*Jerome M. Eisenberg, Inc. v. Hall*, 147 A.D.3d 602 (N.Y. 2017) ............... 16

*Lahiri v. Universal Music & Video Distribution Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ............................................................36

*Leavitt v. McLane Co.*, 2021 Tex. App. LEXIS 3256
    (Tex. Ct. App. Apr. 29, 2021).........................................................24, 25

*Levering v. Addison-Wesley Pub. Co.*,
    1986 U.S. Dist. LEXIS 30170 (N.D. Cal. Jan. 22, 1986) ....................27

*Microsoft Corp. v. Motorola, Inc.,* 795 F.3d 1024 (9th Cir. 2015)......passim

*Miller v. Brunner,* 164 A.D.3d 1228 (N.Y. 2018) ........................................ 16

*Navellier v. Sletten*, 106 Cal. App. 4th 763 (Ct. App. 2003)....................... 22

*Neman Bros. & Assoc. v. Interfocus, Inc.*,
    2023 U.S. Dist. LEXIS 60267 (C.D. Cal. Apr. 3, 2023)................32, 33

*Neman Bros. & Assoc. v. One Step Up*,
    2018 U.S. Dist. LEXIS 235809 (C.D. Cal. Feb. 12, 2018)........31, 34, 35

*Olson v. Arnett*, 113 Cal. App. 3d 59 (Ct. App. 1980)...........................21, 22

*Order of Repeatermen & Toll Testboardmen Local Union v. Pac. Bell*,
    1990 U.S. Dist. LEXIS 7729 (N.D. Cal. 1990) .....................................18

*Orr v. Bank of Am., NT & SA,* 285 F.3d 764 (9th Cir. 2002)......................16

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
    352 F. Supp. 2d 1048 (N.D. Cal. 2004) .........................................18, 20

*Pro Done, Inc. v. Basham*, 210 A.3d 192 (N.H. 2019) ..........................24, 25

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021). ...........................29

*Walker v. Ford Motor Co.*, 768 Fed. Appx. 601 (9th Cir. 2019)................. 24

*Zuniga v. United Can Co.*, 812 F.2d 443 (9th Cir. 1987)............................ 21

## Statutes

17 U.S.C. § 505 ........................................................................................30

28 U.S.C. § 1927 ......................................................................................36

# INTRODUCTION

The key issue in dispute is whether a contract claim can seek as damages the attorneys' fees incurred with respect to a prior-filed claim that was filed in direct violation of the contract, without those fees being categorized as unrecoverable costs of suit under the American rule. Although the California Supreme Court has not yet taken a stance on this issue, this Court has already held that attorneys' fees spent defending contractually barred claim are recoverable as consequential damages from the breach of the release. It is no leap, then, to affirm the holding with respect to California law based on the facts and arguments presented herein.

The instant case was triggered by the inclusion of a copyrighted photograph in two social media posts that earned less than $5 for appellee Trusper who, as an online marketplace host, had published the posts on its online marketplace on behalf of its merchant Mai Couture. Photographer Wareka initially resolved all matters regarding the photograph with Mai Couture and collected a settlement payment. She then sued Trusper regarding the same image – triggering the instant case that has now consumed more than two years of judicial time and resources.

Appellant Wareka contests the lower court's determination that Wareka had no viable copyright claim and had, in fact, breached the settlement agreement by filing suit against Trusper in the first place. However, the implications of a

1

decision favoring Trusper extend far beyond the area of copyright law or the parties in this case,

This Court should affirm the judgment below and permit Trusper to recover $80,000 as its copyright defense fees. That ruling will set precedent in California that will strengthen the effect of settlement releases, deter future misuses of the judicial system, and reduce the type of duplicative litigation that the instant case exemplifies.

# JURISDICTIONAL STATEMENT

Tamara Wareka filed a complaint against Trusper, Inc. in the United States District Court for the Northern District of California seeking civil damages for copyright infringement under 17 U.S.C. § 101 *et seq.* (ER-85–92.) Trusper filed a counterclaim against Wareka for breach of contract. (ER-163–80.) Trusper moved for summary judgment on both the copyright infringement claim and the breach-of-contract counterclaim. (ER-185–200.) The Court granted summary judgment on both claims (ER-12–13), and the parties subsequently stipulated to an $80,000 judgment representing compensatory damages for the breach of contract (ER-15–16). The Court entered the final judgment on June 26, 2023. (ER-15–16.) That same day, Wareka filed her notice of appeal. (ER-2–6.) This Court therefore has jurisdiction to review the final judgment, *see* 28 U.S.C. § 1291, and the appeal was timely taken within thirty days of judgment, *see* FRAP 4(a)(1)(A).

# STATUTORY AUTHORITIES

This brief relies solely on Copyright Act section 505, which states: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

# ISSUES PRESENTED

I.  Whether a general release of all claims against an alleged copyright infringer protects the promotional platform through whom said alleged infringer posted the same copyrighted image.

II. Whether a contract claim can seek as consequential damages the attorneys' fees incurred with respect to a prior-filed claim that was filed in direct violation of the contract, without those fees being categorized as unrecoverable costs of suit under the American rule.

III. Whether a party who breaches a contract can invoke another state's law on damages after challenging the breach-of-contract claim based on California law and relying on California authority in the lower court proceedings.

IV. Whether a copyright plaintiff who files suit in violation of a settlement release may owe the prevailing defendant its attorneys' fees and costs under Copyright Act section 505, 17 U.S.C. § 505.

## STATEMENT OF THE CASE

Appellant Tamara Wareka is a photographer who is the copyright owner of the subject image, which is registered with the U.S. Copyright Office. During the relevant time period, appellee Trusper, Inc. hosted an online marketplace where sellers of beauty products would post promotional content and attract potential sales. (ER-166, ¶ 8.) Mai Couture was one of Trusper's merchants who used the Trusper Marketplace to post third-party content promoting its products.[1] The parties' relationship, including Mai Couture's obligation to create product-related social media content, is memorialized in their Services Agreement executed in 2016. (ER-290–91.)

Mai Couture found Wareka's image and originally posted it on its own Instagram page in 2018 (ER-125) before repurposing it for Trusper's marketplace in 2019 (ER-127–29). (See side-by-side comparison of both uses at ER 110.) Wareka discovered both uses in 2020 and contacted both parties, through which she learned that Mai Couture was a third-party content provider for the Trusper Marketplace. (ER-367–68.) Wareka ultimately settled the matter with Mai Couture in 2020 through an agreement that released all future claims related to the photograph as

---

[1] Trusper, Inc. called its marketplace, which has since been discontinued, the "Musely Marketplace." This brief refers to the marketplace as the Trusper Marketplace for purposes of clarity; however, all references to the "Musely Marketplace" in the record are synonymous.

5

against Wareka, Mai Couture and all others "working in concert or participation with them, or under their direction or control." (ER-73, ¶ 6.) Yet Wareka sued Trusper in 2021 in the U.S. District Court for the Northern District of California–alleging copyright infringement based on Trusper's publication of the same photograph. (ER-85–92.)

As a mere platform, Trusper did not have control over the content posted by its users. However, it took all prudent steps to prevent intellectual property infringement on its platform: it had a written policy warning its merchants to not post infringing content (ER-113–14, 161), and it also had a DMCA registered agent to receive takedown requests (ER-52, lns. 21-22). Accordingly, when Wareka contacted Trusper regarding each of the two accused posts, Trusper quickly removed them. (ER-264, 288.) That, however, was not enough to satisfy Wareka–leading to the instant suit.

The litigation that has unfolded since 2021 was based on two transient social media posts that garnered no real financial gain for Trusper. Under its contract with Mai Couture, Trusper was entitled to 20 percent of Mai Couture's sales revenue generated from the Trusper Marketplace. (ER-290–91.) Mai Couture made no immediate sales on the platform when the accused posts were published in July 2019. Weeks later in September 2019, there was a single $21.95 sale, which was Mai Couture's final sale through the Marketplace. (ER-264, lns. 6-7; ER-287, lns. 22-

23.) Even assuming that sale was attributable to the accused posts, Trusper earned less than $5 from it.

Yet Wareka persisted in her copyright enforcement efforts against Trusper based on the now non-existent posts. After months of persuading Wareka to drop the lawsuit based on the contractual release, Trusper filed a breach-of-contract counterclaim in April 2022 to enforce the settlement agreement. (ER-163–80.) Wareka responded with a California anti-SLAPP motion which the Court denied in July 2022, calling the motion "obviously inappropriate." (ER-8–10.) Trusper then sought summary judgment on the copyright claim and the breach-of-contract counterclaim based on the settlement release. (ER 185–200.) In January 2023, the Court held that Trusper was indeed a released party and accordingly granted summary judgment on both claims. (ER-12–13.)  The parties stipulated to an $80,000 damages award to Trusper based on Trusper's success on its contract counterclaim. (ER-15–16.) On June 26, 2023, the Court entered the final judgment, and Wareka filed her notice of appeal. (ER-15–16; ER-2–6.)

## SUMMARY OF ARGUMENT

The key debate is whether Wareka's copyright suit against Trusper was contractually barred by Wareka's prior settlement agreement with Trusper's merchant Mai Couture regarding the same image. Trusper can indeed claim the benefit of the contractual release as a party related to Mai Couture, because the accused posts only arose as the product of the business relationship between Mai Couture and Trusper.

Trusper therefore seeks to recover the attorneys' fees it incurred defending the copyright claim that was released by the prior settlement. Trusper asks this Court to harmonize California law with the law of other states such as Texas, Virginia, and New Hampshire–all of which treat the breach of a liability release like any other breach of contract and permit an award of legal defense fees as consequential damages from the breach. New York's stance on the issue is irrelevant, for the settlement agreement's New York choice of law does not apply to the damages issue, as it does not depend on contract interpretation.

Even were this Court to disagree regarding the availability of contract damages, the Copyright Act provides an independent, non-contractual basis for the same fee award. Copyright Act section 505 gives courts the broad discretion to require a losing party to compensate the prevailing party's attorneys' fees based on the equities of the case. The litigation abuse of Wareka and her counsel in doggedly

8

pursuing this baseless copyright claim would surely warrant fees under section 505

– making any error of the lower court on contract damages harmless.

## STANDARD OF REVIEW

A lower court's grant of summary judgment is reviewed de novo.  *350 Mont.*

*v. Haaland*, 50 F.4th 1254 (9th Cir. 2022).

**ARGUMENT**

This case involves misuse of the judicial system by a copyright owner who disregarded a contractual release, created years of litigation over a literal $5 claim, and now claims that she is immune from any financial responsibility for the harm that she caused to the prevailing defendant.

In the case at hand, photographer Wareka discovered that two related parties, Trusper and Mai Couture, had used her copyrighted image without permission. These related parties were in contract with each other to promote Mai Couture's products on Trusper's channels, which was where the subject image was published. Wareka resolved the matter with Mai Couture, releasing all future claims against Mai Couture and its affiliates regarding this particular image, and then sued Trusper alleging infringement of the same image. After months of litigation, Trusper filed a breach of contract countersuit on the basis that Wareka had breached the settlement release by filing suit.

On summary judgment, the lower court held that Trusper prevailed as a matter of law on both the copyright claim and the breach of contract claim. The Court held that Trusper was a released party under the settlement agreement, Wareka's copyright suit breached the settlement release, and Trusper's attorneys' fees defending the copyright claim were consequential damages arising from the

10

breach of the release. Based on the ruling, the parties stipulated to an $80,000 judgment against Wareka representing breach-of-contract damages.

The Court should affirm summary judgment on both claims and uphold the $80,000 award to Trusper. First, as a threshold matter, Trusper can claim the benefit of the contractual release as a party related to Mai Couture, because the accused posts only arose as the product of the business relationship between Mai Couture and Trusper. Second, California law should permit Trusper to recover its copyright defense fees as the subject—rather than the consequence—of the breach-of-contract claim. Third, the settlement agreement's New York choice of law does not apply to the damages issue, because it is a legal issue that does not depend on contract interpretation. Wareka also waived her right to invoke New York law in the proceedings below. Fourth, the Copyright Act provides an independent, non-contractual basis for the same fee award – making any error of the lower court on contract damages harmless. For all of these reasons, the Court should affirm summary judgment and uphold the award of Trusper's attorneys' fees incurred in defending the wrongfully filed copyright claim.

I.   **The Wareka-Mai Couture settlement agreement barred Wareka's lawsuit against Trusper based on Trusper's publication of the subject image in tandem with Mai Couture.**

There is no true dispute that Trusper was a released party under the copyright settlement agreement between Wareka and Mai Couture, the latter of whom published the accused photograph on Trusper's channels. During the relevant time period, Trusper hosted an online marketplace where sellers of beauty products would post promotional content and attract potential sales. Mai Couture, one of these merchants, originally posted the photograph on its own Instagram page in 2018 before repurposing it for Trusper's marketplace in 2019. Wareka discovered both uses in 2020 and contacted both parties, through which she learned that Mai Couture was a third-party content provider for the Trusper Marketplace. Wareka ultimately settled the matter with Mai Couture in 2020 through an agreement that released all future claims related to the photograph as against Wareka, Mai Couture and all others "working in concert or participation with them, or under their direction or control." That release necessarily encompassed the appearance of the accused photograph on Trusper's channels because those posts arose in the course of Mai Couture and Trusper's collaboration to promote Mai Couture's products. Yet Wareka sued Trusper in 2021 alleging copyright infringement based on these same posts. Her claim was barred by the settlement agreement with Mai Couture, which constituted a breach of the agreement.

**A. The record below contains all of the undisputed facts necessary to establish that the settlement release barred the copyright claim against Trusper.**

The record sets forth the Wareka-Mai Couture settlement agreement, the Trusper-Mai Couture services agreement, Wareka's original photograph, and the allegedly infringing posts published by Mai Couture in 2018 and Trusper in 2019. Together, these eliminate all genuine disputes of material fact as to whether Trusper was a released party under the settlement agreement due to its coordination with Mai Couture with respect to the subject image.

The record contains the Wareka-Mai Couture **"Release & Settlement Agreement"** from 2020 (ER-73–76), which by its terms "shall inure to the benefit of and be binding upon the Parties and their respective partners, officers, directors, agents, employees, affiliates, subsidiaries, divisions, <u>all those acting in concert or participation with them or under their direction or control</u>, and upon their successors and assigns. (ER-73, ¶ 6.)

The record also contains the **Trusper-Mai Couture "Services Agreement"** (ER-290–91) under which Mai Couture was permitted to sell its own products using the Trusper Marketplace so long as it followed all requirements, including creating promotional social media content. In return, Trusper would earn a 20-percent commission on all Mai Couture sales generated vis-à-vis the partnership. (ER-290–91.) Although the agreement refers to an initial Beta Period in 2015-

13

2016, the parties' relationship continued through the relevant time period in 2019: Mai Couture's final sale through the Trusper Marketplace occurred on September 17, 2019, roughly two months after the accused posts were published on Trusper's channels. (ER-287, ¶ 9; ER-293.)[2]

The record further contains the various undisputed images at issue, which together support the inference of Trusper and Mai Couture's coordination with respect to the accused posts. The Court can refer to Wareka's original copyrighted photograph (ER-123), the cropped version that Mai Couture posted on its own Instagram in 2018 (ER-125), and the identical cropped version that appeared on Trusper's pages on Mai Couture's behalf in 2019. (ER-127, 129.) The Court can also refer to the side-by-side photograph comparisons in the record at ER 108 and

---

[2] For the first time on appeal, Wareka argues that the Trusper and Mai Couture were no longer working together as of 2019. (AOB 31–32.) Wareka received the Mai Couture sales data (ER-293) in discovery, showing the September 17, 2019, sale through the Trusper Marketplace. Trusper then relied on that evidence in both its anti-SLAPP opposition (ER-264, lns. 3–4) and in its motion for summary judgment (ER-196, lns. 18–21) to show that the accused posts were the product of Trusper and Mai Couture's coordination. The summary judgment motion even stated: "Wareka also does not dispute that Mai Couture was a Musely Merchant when the Trusper Posts arose, nor does she dispute that the Trusper Posts promoted sales of Mai Couture's product and thus were for the benefit of Mai Couture." (ER-196, lns. 18–21). Yet nowhere in the proceedings below did Wareka contend that Mai Couture was no longer using the Trusper Marketplace as of 2019. This new argument on appeal is therefore forfeited. *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 825 (9th Cir. 2000).

110 to see that Mai Couture originally found Wareka's photograph, altered it, and then used it on the Trusper Marketplace.

### B. Any reasonable factfinder would conclude that the settlement agreement applied to the posts published by Mai Couture's promotional platform Trusper.

Any reasonable factfinder would decide that the settlement agreement, which absolved Mai Couture and related parties from any future suit over the subject image, applied to Trusper. Trusper was not in the business of promoting the products of random, unaffiliated companies; rather, Trusper and Mai Couture had a written agreement whereby Mai Couture would supply social media content for Trusper's channels promoting Mai Couture products, and Trusper would earn 20 percent of any resulting sales. That relationship, which was still ongoing in 2019, was the only reason that the accused posts were published on Trusper's pages in the first place. Because Trusper worked with other merchants and recognized the risk of merchants providing infringing content, Trusper even had a written policy for its merchants that required merchants to indemnify Trusper for any intellectual property liability from content provided through their use of the Trusper Marketplace. (ER-113–14, 161.)[3] The fact that the same exact version of Wareka's

---

[3] Trusper filed an indemnification claim against Mai Couture under the policy (ER-104–62), but Mai Couture failed to appear after multiple service attempts (ER-42–43, 296).

15

photograph appeared on both parties' channels, but was posted first by Mai Couture independently, further supports the conclusion that Mai Couture violated Trusper's policy by supplying the copyrighted image.

It does not matter whether Wareka subjectively believed at the time of the settlement that Mai Couture was responsible for the Trusper posts so as to place them within the contractual release of "all claims." *Miller v. Brunner*, 164 A.D.3d 1228, 1231 (N.Y. 2018) (a valid general release of "all claims" presumptively applies to claims known or unknown to the parties at the time of contract formation); *Jerome M. Eisenberg, Inc. v. Hall*, 147 A.D.3d 602, 604 (N.Y. 2017) (the law does not permit a party to rely on conscious ignorance to avoid enforcement of a settlement release). Regardless of exactly how Mai Couture supplied the image to Trusper, the record is clear that the allegedly infringing posts financially benefitted both parties and were expressly contemplated by the social media clause in the Services Agreement.

Wareka offers no admissible evidence to create a material dispute of fact on this issue. See *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). She only cites the emails she and her agent Lauren Kelly allegedly received from Mai Couture, claiming that Mai Couture did not supply the subject image to Trusper. (ER-68, ¶¶ 15, 17.) These statements are pure hearsay

16

and do not fall within an exception. Fed. R. Evid. 802. (ER-42, lns. 20-27; ER-43, lns. 1-9.) They are also clearly self-serving, as the statements were prompted by Wareka's inquiries of Mai Couture regarding its allegedly infringing use of the photograph. (ER-270, lns. 13-28; ER-271, lns. 1-3.)

Any further factfinding into the posts' creation would be a waste of judicial time and resources because, at the end of the day, Trusper acted "in concert and participation with, or under the direction or control of," Mai Couture in furtherance of their promotional coordination efforts. (See ER 12 ("Even if these disputes are genuine, they are not material."). The purpose of including a broad release clause is precisely to capture related third parties like Trusper in order to reduce duplicative litigation over essentially the same grievance. The lower court correctly held that the settlement agreement released the accused posts from liability and that this fact was dispositive of both parties' claims. Based on the above, the Court should affirm summary judgment of non-infringement on the copyright claim and likewise affirm summary judgment of Trusper's success on the breach-of-contract claim.

**II.    California law should be construed to permit recovery of attorneys' fees as compensatory damages where the avoidance of litigation was the bargained-for benefit.**

It is already settled that in California, "a party may recover attorney fees not only on a statutory/contractual fee-shifting basis, but also as consequential damages in breach of contract actions when those fees are foreseeable and proximately caused by the breach." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Accordingly, courts routinely award attorneys' fees as damages measuring the harm impermissibly caused by the defendant." *Microsoft Corp. v. Motorola, Inc.,* 795 F.3d 1024, 1050 (9th Cir. 2015). In these instances, the avoidance of attorneys' fees is the bargained-for benefit: when the release of liability is breached, the defending party's resulting attorneys' fees are "not merely a result of the harm that [the breaching party] did him; it is the harm itself." *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1275 (9th Cir. 1983). As a result, the American rule does not apply in these situations. *Microsoft*, 795 F.3d at 1051; *Dutrisac*, 749 F.2d at 1275; *Order of Repeatermen & Toll Testboardmen Local Union 1101 v. Pacific Bell*, 1990 U.S. Dist. LEXIS 7729, *12 (N.D. Cal. 1990) (attorneys' fees from breach of release are recoverable as foreseeable damages rather than incidental costs of suit).

In this case, Trusper lost the bargained-for benefit of the contractual release when Wareka filed suit over the same photograph that had already been settled,

and for which Trusper's merchant had already paid Wareka. The only way that Trusper can be made whole, then, is by Wareka compensating Trusper for the attorneys' fees that it should never have needed to expend in the first place.

### A. A third-party beneficiary like Trusper is equally entitled to seek contract damages where the violated provision entailed the avoidance of litigation.

Under the law of this circuit, contract damages for breach of a settlement release are available to third-party beneficiaries like Trusper. In *Microsoft Corp. v. Motorola, Inc.*, this Court awarded a third-party beneficiary $3 million for attorneys' fees spent defending patent litigation that, per the relevant contract, should not have been brought. *Microsoft*, 795 F.3d at 1034, 1051. The relevant contract in this case was a reasonable and nondiscriminatory (RAND) agreement under which patent owner Motorola was required to permit third parties, such as Microsoft, to practice the subject patents under reasonable license terms. *Microsoft*, 795 F.3d at 1034, 1051. Although the agreement forbade suits against such parties, Motorola filed suit against Microsoft, seeking an injunction against patent infringement, and lost. Microsoft then sued separately for breach of contract and won. Deciding that the RAND agreement forbade Motorola's patent lawsuit, the jury awarded Microsoft $3 million for its attorneys' fees and litigation costs from defending the patent suit.

19

Motorola unsuccessfully appealed the verdict, making the same argument that Wareka makes in the instant appeal: that the American rule prevented Microsoft from recovering attorneys' fees based on the contract. *Microsoft*, 795 F.3d at 1049. But that reasoning, according to the Court, "elide[d] a critical factor . . . [that] the fees at issue here were incurred not in the current breach of contract action but in defending against the injunctive action found to have breached the RAND agreement." *Id.* As the Court explained, "The fees sought are thus distinct from the same-suit fees generally banned by the American rule. As losses independent of the current litigation and triggered by the contract-breaching conduct, they are best characterized as recoverable consequential contract damages—the kind of damages ordinarily recoverable in breach of contract suits." *Id.* The Court ultimately upheld the award of the patent action defense fees on the basis that these were separate from Microsoft's costs in pursuing the subsequent contract action. *Microsoft*, 795 F.3d at 1051.

Like Microsoft, Trusper here sought to recover only its copyright defense fees, not the additional fees spent prosecuting the breach-of-contract counterclaim. These are recoverable because they are "analogous to these various circumstances in which attorneys' fees expended in earlier litigation are collectible as damages for a proven legal injury." *Microsoft*, 795 F.3d at 1051; see also *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

20

On summary judgment, Trusper requested only these copyright defense fees (ER-45, lns. 15-17), and the lower court properly granted that request (ER-13). Because the original copyright suit long predated Trusper's breach-of-contract counterclaim, most of Trusper's total fees were related to the copyright suit alone. The parties ultimately stipulated to $80,000 as the proper amount representing the fees Trusper incurred in defending the copyright claim from September 2021 to June 2023 (when the lower court approved the stipulated judgment). (ER-16.) The anti-SLAPP ruling, the summary judgment ruling, and the stipulated judgment all made clear that the attorneys' fee award represented compensatory damages rather than costs of suit. (ER-13; ER-16, lns. 6, 11.)

### B. The American rule does not apply where attorneys' fees are the subject of the action rather than costs of suit.

As the lower court's anti-SLAPP ruling stated, *Olson* and *Navellier* overextended the American rule by failing to differentiate between fees related to the breach-of-contract action and fees related to the prior-filed copyright claim. (ER-9.) According to this Court, the rule "cannot be read as in any way affecting those cases in which the attorney fees are not awarded to the successful litigant in the case at hand, but rather are the subject of the lawsuit itself." *Zuniga v. United Can Co.,* 812 F.2d 443, 455 (9th Cir. 1987). In *Olson*, the subject action was a personal injury suit: the victim filed a personal injury suit, agreed to a settlement,

and then refused to accept the settlement payment. *Olson v. Arnett*, 113 Cal. App. 3d 59, 63 (Ct. App. 1980). As a result, the defendant had to concurrently prosecute the breach of the settlement and defend the personal injury claims brought against him—two entirely different tasks based on different facts. *Id.* In *Navellier*, the subject action was related to management of a mutual fund. *Navellier v. Sletten*, 106 Cal. App. 4th 763, 768 (Ct. App. 2003). Once that matter concluded, the defendant filed a contract action for breach of the release in the parties' prior settlement agreement. *Id.* Again, the defendant had to prosecute the contract action separately from defending the claims originally brought against him. *Id.* In both *Olson* and *Navellier*, the court wrongly lumped the prosecution fees and defense fees together so that the original defendants could not recover their defense fees either.

This Court corrected that error in *Microsoft v. Motorola*. As discussed above, the subject action was a patent infringement lawsuit filed in violation of a contract. *Microsoft Corp. v. Motorola, Inc.,* 795 F.3d 1024, 1050-51 (9th Cir. 2015). But unlike in *Olson* and *Navellier*, this Court recognized the patent suit and the contract action as separate. *Id.* Only the contract action was subject to the American rule, and the patent defendant was permitted to recover for defense of the prior-filed patent case. *Id.*

*Microsoft*'s reasoning was then adopted by the California Court of Appeal in *Copenbarger v. Morris Cerullo World Evangelism, Inc*., 29 Cal. App. 5th 1, 9-11 (Ct. App. 2018). In this case, cited by the lower court (ER-9), the subject action was an unlawful detainer action that was not dismissed in spite of the parties' settlement agreement. *Id.* at 8-9. Like in the foregoing cases, the defendant had to separately defend the unlawful detainer action and prosecute the breach of the settlement agreement. *Id.* at 8-11. In line with Trusper's position, *Copenbarger* observed that the cessation of the unlawful detainer suit was the "benefit and intended goal" of the settlement; the defendant would not have had to expend $118,000 in continued legal expenses had the plaintiff upheld its end of the bargain and dismissed the suit. *Id.* at 8-9. Criticizing *Olson* and *Navellier* outright on the basis that "attorney fees *qua* damages are recoverable as damages, and not as costs of suit," the Court opined that the unlawful detainer defense fees (but not the breach of contract fees) should be recoverable according to proof. *Id.* at 10.

### C. Based on the weight of the authority and compelling policy considerations, the California Supreme Court would adopt the lower court's approach.

Both precedent and policy rationale support the lower court's decision to award fees. (ER-9.) The copyright lawsuit filed by Wareka against Trusper is no different from the personal injury suit in *Olson*, the mutual fund suit in *Navellier*,

23

the patent suit in *Microsoft*, and the unlawful detainer suit in *Copenbarger*. The former two cases, relied on by Wareka, were decided at least twenty years ago, whereas the latter two cases both were decided within the past ten years. As the latter two cases illustrate, a breach-of-contact plaintiff, if successful, should recover whatever damages were proven from the breach. *Microsoft*, 795 F.3d at 1050-51; *Copenbarger*, 29 Cal. App. 5th at 10. When a party breaches a contractual promise to avoid a lawsuit, that lawsuit is the damage from the breach; it is the harm suffered by the aggrieved party regardless of whether he decides to sue to enforce the contract. That falls outside of the American rule, which only applies to litigation fees that occur by virtue of one party choosing to enforce the contract in court.

This Court can also look at accordant decisions from other jurisdictions to support the lower court's inference of California's likely approach. See *Walker v. Ford Motor Co*., 768 Fed. Appx. 601, 604 (9th Cir. 2019) (Bennett, J., dissenting) (extra-jurisdictional cases are relevant in predicting the ruling of a state supreme court). Other states—including New Hampshire, Virginia, and Texas—hold that when a settlement release is breached, the wronged party can recover attorneys' fees related to the wrongly filed action as consequential damages. *Bolton v. McKinney*, 855 S.E.2d 853, 857 (Va. 2021); *Pro Done, Inc. v. Basham*, 210 A.3d

192, 202-03 (N.H. 2019); *Leavitt v. McLane Co.*, No. 03-19-00529-CV, 2021 Tex. App. LEXIS 3256, at *34 (Tex. Ct. App. Apr. 29, 2021).

Decisions from these jurisdictions elucidate the wisdom of this approach. For example, Texas courts observe that "there could be no more foreseeable consequence of a breach of the settlement agreement than the cost of litigation that it was specifically designed to avoid . . . therefore, the [defendants] need rely on only the law of contracts to recover prior attorney's fees as direct damages under the terms of the settlement agreement." *Ganske v. WRS Group, Inc.*, No. 10-06-00050-CV, 2007 Tex. App. LEXIS 2991, at *8 (Tex. Ct. App. Apr. 18, 2007); accord *Leavitt*, 2021 Tex. App. LEXIS 3256, at *34.  The New Hampshire Supreme Court recently adopted the same principle, explaining that the approach operates as an application of ordinary contract principles rather than as an exception to the American rule. *Pro Done, Inc. v. Basham*, 210 A.3d 192, 203 (N.H. 2019). The Virginia Supreme Court has ruled similarly on the basis that the result is necessary to give any force or effect to contractual releases:

> Allowing damages in this circumstance compensates the injured party for its loss and puts it back in the same position in which it would have been had the other party adhered to its promise. **To prevent the [wronged party] from obtaining direct damages from the breach of an express term of the contract simply because they happen to also be attorney's fees would rob them of the benefit of their bargain and make their victories in the respective lawsuits hollow.** *Bolton v. McKinney*, 855 S.E.2d 853, 857 (Va. 2021) (emphasis added).

As the courts observe, permitting recovery of attorneys' fees from a prior-filed action as contract damages is wise in order to promote adherence to settlement agreements. If a party can ignore a promise not to sue and force unnecessary litigation without the prospect of punishment for the breach, that would render contractual releases and non-suit clauses toothless. The lower court's holding is justified based on *Microsoft*, *Copenbarger*, and other cases both within and outside of this circuit. The award of Trusper's attorneys' fees as compensatory damages was thus proper under California law, and this Court should affirm.[4]

---

[4] Nominal damages are available for a breach of contract even where actual damages are unavailable by operation of law. *Fisher v. Biozone Pharms., Inc.,* 2017 U.S. Dist. LEXIS 42822, at *12-*14 (N.D. Cal. Mar. 23, 2017), citing *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1060-62 (N.D. Cal. 2016). However, this Court need not decide the issue. If this Court were to decline to recognize Trusper's fees as awardable as contract damages, the Court should uphold the award as supported under Copyright Act section 505 (or remand to the lower court to decide eligibility for a section 505 award of attorneys' fees).

**III.  The New York choice-of-law clause does not govern the damages issue, and, in any event, Wareka forfeited the issue under the doctrines of invited error and waiver.**

Wareka cannot argue that the choice-of-law clause in the settlement agreement requires that New York law should govern the damages issue. Firstly, the choice-of-law clause does not apply to damages principles that fall outside the four corners of the contract. Secondly, Wareka invited the lower court to apply California law by invoking California's anti-SLAPP statute and basing her argument against a damages award on California law. Thirdly, after her anti-SLAPP motion was denied, Wareka waived the argument for New York law by failing to affirmatively contest the lower court's application of California law in the anti-SLAPP ruling.

As a threshold matter, the lower court's choice of California law was correct because a contractual choice of law provision applies only to matters of contract interpretation, not to pure matters of law such as the contours of the American rule. *Levering v. Addison-Wesley Pub. Co.*, No. C-85-7480 RFP, 1986 U.S. Dist. LEXIS 30170, at *4 (N.D. Cal. Jan. 22, 1986) (applying California law to recovery of damages in spite of the contract's choice of Massachusetts law.) Purely legal principles such as application of the American rule are governed by the law of the state having the most significant relationship to the contract, which here is California. *See id.* Mai Couture and Trusper both reside in California, and the

contract has no real connection to New York given that none of the parties reside there and the contract was not performed there. (See ER-44.) Tellingly, Wareka also chose to invoke California's anti-SLAPP statute in response to Trusper's contract claim, thus subjecting the contract to California law for legal issues falling outside the four corners of the contract. (ER-333–35.) Taking Wareka's lead, the Court correctly applied California law and concluded that Trusper could recover the fees it spent defending the copyright action that the settlement agreement had released.

Based on the above, the invited error doctrine clearly applies. Under the invited error doctrine, a party who encourages the court to adopt a certain choice of law is precluded from later contesting that choice of law. *Houng v. Tatung Co.,* 499 B.R. 751, 763 n.43 (C.D. Cal. 2013). Wareka responded to Trusper's breach-of-contract claim by filing an anti-SLAPP motion based on California Civil Code section 425.16. Then, Wareka's entire discussion of the damages issue in her reply brief revolved around California law. (ER-252–54.) She addressed the California cases cited by Trusper and ultimately cited *Olson*, discussed above, for the proposition that the American rule bars Trusper from recovering. (ER-253, lns. 4-13.). Based on the briefing, the lower court held that California law indeed applies but rejected *Olson*—denying the anti-SLAPP motion based on *Copenbarger*, a more recent California case decided in 2018. (ER-8–10.) As a result, the invited

error doctrine bars any challenge to the lower court's application of California law to damages.

Waiver additionally applies. Under the doctrine of waiver, an appellate court ordinarily will not rule on issues that were not presented or developed before the lower court. *Villanueva v. California*, 986 F.3d 1158, 1164 n.4 (9th Cir. 2021). Failure to raise an issue in summary judgment briefing counts as waiver. *Id.* That is what Wareka did here. When Trusper in its summary judgment motion discussed the damages issue according to California law, Wareka did not urge the Court to apply New York law instead. Nor did she explain why the Court's choice of law was purportedly incorrect.[5] As a result, the Court remarked in a post-summary judgment conference that Wareka had waived any argument in favor of New York law on the damages issue. (ER-25, lns. 22-25; ER-26, lns. 1-3.)

---

[5] Wareka's claim that Trusper's motion did not clarify the applicable law (ER-59, n.3) is irrelevant, because the lower court had already chosen California law for the damages issue in the earlier anti-SLAPP ruling.

**IV.    Any possible error regarding Trusper's entitlement to its copyright defense fees as contract damages is harmless, because Trusper would be equally entitled to the same fees as a prevailing party under the Copyright Act.**

Even if Trusper could not recover its copyright defense fees as compensatory damages for breach of the settlement, that hypothetical error would be harmless because Trusper is entitled to the same exact fees on different grounds. An error is harmless, and does not require reversal, where the ultimate outcome would be the same absent the error. *Golden Eagle Ins. Co. v. Travelers Cos*., 103 F.3d 750, 758 (9th Cir. 1996). In this case, were the Court to reverse and remand, Trusper would be entitled to recover its copyright defense fees under 17 U.S.C. section 505, which gives the lower court the discretion to award full attorneys' fees to the prevailing party in a copyright action. 17 U.S.C. § 505. The release of related third parties in the settlement agreement made Wareka's copyright claim frivolous, yet she irresponsibly prosecuted the case for nearly two years and then filed the instant appeal. The lower court, in its summary judgment ruling, even alluded to the availability of section 505 damages (although it did not decide the issue, presumably because the contract damages achieved the same result). (ER-13.) Based on the probability that the lower court would award Trusper the same $80,000 under the Copyright Act due to Wareka's litigation abuse, this Court should affirm the judgment below.

30

In deciding whether to award fees to a prevailing copyright defendant, the lower court will assess the frivolity of the copyright claim, the plaintiff's motivation, the reasonableness of the plaintiff's factual and legal arguments, the degree of success obtained, and considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Filing a claim that was released by a prior settlement agreement can certainly support an award of fees to the prevailing defendant under section 505. *Neman Bros. & Assoc. v. One Step Up*, No. 2:17-cv-06400, 2018 U.S. Dist. LEXIS 235809, at *5 (C.D. Cal. Feb. 12, 2018) (awarding defendant $40,000 in fees and costs after summary judgment was granted based on the release in the settlement agreement). A pattern of belligerent filing of copyright lawsuits can also support an award under section 505. See *Design Basics, LLC v. Eenigenburg Builders, Inc.*, 2021 U.S. Dist. LEXIS 185368, *2 (N.D. Ind. Sept. 28, 2021) (awarding defendant $416,000 in attorneys' fees and noting that the plaintiff's "copyright troll" tendencies supported the award).

On remand, Trusper would almost certainly recover under section 505 because Wareka knowingly filed a frivolous claim in spite of a contractual release, irresponsibly prosecuted the case for nearly two years, and then—despite the lower court's characterization of the suit as "obviously inappropriate"—filed the instant appeal. She is a copious copyright litigant, having filed more than 60 infringement actions across the country since 2020. In 2020, Wareka discovered nearly identical

Mai Couture promotional posts on Mai Couture's own Instagram and on Trusper's Instagram. Knowing that Mai Couture advertised its products vis-a-vis the Trusper Marketplace, Wareka fully settled the matter with Mai Couture in 2020—releasing Mai Couture and all parties "acting in concert or participation with" Mai Couture. Then, presumably wanting more money from a deeper pocket, Wareka ignored Trusper's relationship with Mai Couture and filed suit against Trusper in September 2021. Wareka was not ignorant of the settlement, having sent Trusper a copy of the agreement in January 2022. (ER-46, lns. 2-4.) Trusper was willing to resolve the matter early on, and even absorb the initial legal fees if Wareka would simply dismiss the case, but those resolution efforts went to no avail.

Finally, after these repeated requests were denied, Trusper was forced to file a breach-of-contract counterclaim in order to avoid waiving a compulsory counterclaim. In response, Wareka filed a California anti-SLAPP motion that, per the lower court's ruling, was "obviously inappropriate." (ER-10.) Here, the lower court clearly telegraphed the copyright claim's futility, for the facts alleged by Trusper were sufficient to establish that (1) the settlement agreement precluded the copyright claim; and (2) Trusper could potentially recover damages for breach of the settlement. (ER-9.) Even if the second holding were, hypothetically, incorrect, the first holding alone was dispositive as to the copyright action, which would make Trusper a prevailing party under section 505. See *Neman Bros. & Assoc. v.*

*Interfocus, Inc.*, 2023 U.S. Dist. LEXIS 60267, *5 (C.D. Cal. Apr. 3, 2023) (copyright defendant whose contract counterclaim failed could still potentially recover attorneys' fees under section 505). Yet Wareka forced Trusper to file a dispositive motion and consume more of the Court's time to get to a final judgment.

The instant legal dispute, which has now consumed the resources of the lower court and the appellate court, concerns two social media posts from 2019 that Trusper removed immediately upon notice and which caused very little gain or harm for either party. Wareka's copyright suit alleged infringement based on Trusper's two promotional posts for Mai Couture in 2019. Not intending to infringe, Trusper swiftly removed both posts upon notice from Wareka. (ER-264, 288.) And, as discussed in the summary judgment motion, the posts earned, at most, $4.39 for Trusper as a commission from Mai Couture's single sale post-dating the accused posts. (ER-264, lns. 6-7; ER-287, lns. 22-23.) So much more than that has been wasted by the parties, by the lower court, and now this Court due to Wareka's relentless prosecution of the case.

The lower court, clearly believing this to be an abuse of the judicial system, chided opposing counsel for its mismanagement of the case during a March 24, 2023, conference. (ER-26–27.) To ensure Wareka's personal knowledge of the Court's concerns, the Court even required opposing counsel to read the relevant

portions of the conference transcript aloud to Wareka after the fact. (ER-27, lns. 8-13.) Ignoring these severe admonitions, Wareka nonetheless chose to file the instant appeal—in spite of the known probability of section 505 fees even if the contract fees were, hypothetically, unavailable as a matter of law.

As an example, a few years ago in *Neman Bros. v. One Step Up*, the Court awarded section 505 fees to a prevailing defendant for a copyright claim that had been released. There, the plaintiff's breach of the settlement agreement, combined with the defendant's complete victory on the claims, justified the award even without a finding of frivolousness or bad faith. *Neman Bros. & Assoc. v. One Step Up*, No. 2:17-cv-06400, 2018 U.S. Dist. LEXIS 235809, at *5 (C.D. Cal. Feb. 12, 2018). The Court explained: "An award of fees serves to deter similarly unreasonable suits in the future. Moreover, the enforcement of settlement agreements in copyright actions helps demarcate the boundaries of copyright law, which in turn furthers the Copyright Act's ultimate purpose of promoting creativity." *Id.*

Wareka's misbehavior in the instant case presents even stronger grounds for section 505 fees. Wareka's copyright claim was frivolous, her legal arguments denying the effect of the settlement agreement were meritless, and her motivation was to pressure Trusper into settlement without regard to the reasonableness of her claim. She obtained no degree of success on the merits, and she has belligerently

wasted the time and resources of the parties and the courts by blindly pursuing her claims. Considerations of compensation and deterrence particularly support an award, for Wareka has subjected Trusper to years of litigation in spite of multiple warnings from Trusper and from the lower court to abandon the copyright claim. Moreover, an award of fees would deter other repeat copyright filers from similar misconduct and encourage more prudent filing of claims. See *Neman*, 2018 U.S. Dist. LEXIS 235809, at *5.

Although this Court could remand to the lower court for a determination of section 505 eligibility, the Court may instead affirm the fee award based on its belief that the lower court, more likely than not, would award those fees under section 505. An appellate court may affirm a judgment based on harmless error if the court believes that remand will inevitably produce the same outcome as before, for "remand in these circumstances would generate unnecessary legal proceedings and waste judicial resources." *Golden Eagle Ins. Co. v. Travelers Cos*., 103 F.3d 750, 758 (9th Cir. 1996). Given how much judicial resources have already been wasted on this frivolous, low-value copyright claim, Trusper requests affirmance based on section 505 eligibility in the event the Court does not believe that contract damages were appropriate.

Regardless of the viability of the contract claim, Copyright Act section 505 supports the $80,000 judgment to Trusper as a prevailing party on the copyright

claim. This independent basis for the same judgment makes any possible error as to contract damages harmless error, justifying affirmance of the judgment below. [6]

## CONCLUSION

The Court has the opportunity to achieve two important goals that transcend the parties and the facts of this case. Firstly, a decision in Trusper's favor will deter future copyright owners from being greedy and pursuing double recovery in violation of their contractual obligations. Validating the force and effect of general releases will increase the certainty of settlement, making it a more attractive option to potential litigants and reducing the burden of duplicative litigation on judicial resources.

---

[6] Were the case remanded, Trusper would not only seek recovery of its copyright defense fees from Wareka under 17 U.S.C. section 505, but it would also seek to hold Wareka's counsel jointly and severally liable for the award under 28 U.S.C. section 1927. Section 1927 imposes liability for attorneys' fees on opposing counsel "who so multiplies the proceedings in any [federal] case unreasonably and vexatiously." 28 U.S.C. § 1927. Opposing counsel's complicity with their client in the reckless prosecution and appeal of this case could easily justify section 1927 sanctions against Mathew Higbee, Ryan Carreon, and/or Higbee & Associates. *Lahiri v. Universal Music & Video Distribution Corp.,* 606 F.3d 1216, 1218 n.1 (9th Cir. 2010) (copyright case where opposing counsel was sanctioned under section 1927); *In re Facebook, Inc. Consumer Privacy Litig.,* 2023 U.S. Dist. LEXIS 22328, at *81 n.11 (N.D. Cal. Feb. 9, 2023) (a law firm can be sanctioned for bad-faith litigation under the Court's inherent powers rather than under section 1927).

Secondly, the decision will harmonize California with other states with respect to the recovery of attorneys' fees as consequential damages for breach of a contract provision that specifically required the avoidance of litigation. That decision will encourage compliance with contractual releases because parties who ignore them will face the prospect of paying the other side's attorneys' fees if the suit is found to have breached the release. This Court can make a ruling that will better protect the expectations of contracting parties, restore aggrieved parties to their rightful position when their expectations of non-suit are foiled, and reduce the courts' docket by discouraging these types of lawsuits to begin with.

To further these policy goals, Trusper asks that the Court affirm the $80,000 judgment below that was based upon the lower court's (a) grant of summary judgment of non-infringement on the copyright claim; and (b) grant of summary judgment in Trusper's favor on the breach-of-contract counterclaim.

Date: December 18, 2023

EASTMAN IP

s/ Gary Eastman

Gary L. Eastman, Esq.
Sara Gold, Esq.
*Attorneys for Appellee*
*Trusper, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number 23-15930.**

Appellee Trusper, Inc. is unaware of any related cases currently pending in this Court.

s/ Gary Eastman         Dated: December 18, 2023

v

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## Certificate of Compliance for Briefs

**9th Cir. Case Number 23-15930.**

I am the attorney or self-represented party.

**This brief contains 8,090 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify this brief:

[x] complies with the word limit of Cir. R. 32-1.

**Signature:** s/ Gary Eastman          **Date:** December 18, 2023

vi

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: October 18, 2023          Respectfully submitted,

Eastman IP

s/ Gary Eastman

Gary L. Eastman, Esq.
*Attorneys for Appellee*
*Trusper, Inc.*